THE STATE OF OHIO, APPELLEE, v. WILLIAMS, APPELLANT.

(No. 3640—Decided June 7, 1954.)

Mr. *Felix Mika,* law director, Mr. *Frank J. Battisti* and Mr. *Irwin J. Kretzer,* for appellee.

Mr. *R. B. Crumpler* and Mr. *Joseph P. Sontich,* for appellant.

*Per Curiam.* A jury in the Municipal Court of Youngstown found defendant guilty of operating an automobile on the streets of Youngstown while under the influence of intoxicating liquor in violation of the provisions of Section 6296-30, General Code (Sections 4507.34, 4507.37, 4507.99, Revised Code). The trial judge fined defendant $500, sentenced him to serve six months in the Mahoning County Jail, and revoked his license to operate a motor vehicle in Ohio "outright" for one year, and, thereafter, until he complied with the "financial responsibility laws of the state of Ohio."

Defendant appealed from the judgment of conviction and sentence to the Court of Common Pleas, which affirmed the judgment of the trial court, and appealed to this court on questions of law from the judgment of the Court of Common Pleas.

About two o'clock in the afternoon of August 23, 1952, in response to a call received by radio in the police car in which he was riding, the arresting officer arrested defendant in a parking station booth at the corner of South Walnut and Front Streets in the city of Youngstown, where he was sitting on a stool, slumped forward with his head buried in his hands. Defendant admitted when arrested that he was the driver of an automobile which had collided with two utility poles situated in that vicinity. The arresting officer, and other officers of the Police Department of the City of Youngstown who accompanied and assisted him, had difficulty "loading" defendant into the police cruiser because, as they testified, of his drunken condition. An independent witness identified defendant as the operator of the automobile that collided with the utility poles.

There is evidence that defendant could not stand unassisted, could not walk unassisted into the police station, and could not walk straight on the white line in the police station; that his breath smelled of liquor, his eyes were dilated and red, and his face was flushed; that the routine tests to determine intoxication were positive, and the diagnosis of his condition made by an assistant Youngstown city physician was that defendant was intoxicated when he arrived at the police station.

By assignments of error, oral argument, and brief, defendant contends "that the court (trial) erred in refusing to direct a verdict for the defendant at the close of state's evidence"; erred "in its refusal to charge

the jury as requested by defendant''; erred ''in refusing defendant's counsel to argue to the jury certain facts elicited at the trial''; erred in refusing to direct a verdict for the defendant ''at the end of all evidence''; and finally ''that the defendant's rights to a fair trial were prejudiced by statements of witnesses, the prosecutor and the court.''

Counsel for defendant state by brief that:

''Shortly after 2 p. m. on the 23rd day of August, 1952, defendant left his place of business on Boardman Street and proceeded in an easterly direction to Walnut Street and turned right on said latter street and proceeded in a southerly direction to go to his (public parking) lot at the corner of Walnut and Front Streets. That as he approached said latter intersection, he was seized with cramps in his hands and leg and proceeded through said intersection unable to control his car so as to turn into his lot and in doing so, proceeded south on Walnut Street, struck a pole, and severely damaged his automobile. The defendant suffered personal injuries to his left side, head and knees.''

Counsel for defendant state further by brief that ''defendant had been treated for spasms on previous occasions by the late Dr. Jones, who had passed away approximately two weeks before this trial.''

Neither the arresting officer, who was called from police headquarters and arrested defendant without a warrant, nor any other officer of the Youngstown Police Department witnessed the operation by defendant of the automobile which he was charged with operating illegally.

Defendant waived his right to rely on the claimed error that the trial judge erred to his prejudice in overruling his motion for a verdict to be directed in his favor when he accepted the ruling of the court and proceeded with his defense and introduced evidence

in his own behalf. *Halkias* v. *Wilkoff Co.*, 141 Ohio St., 139, 47 N. E. (2d), 199.

The trial judge refused to permit defendant's counsel to argue during final argument the manner in which defendant was arrested without warrant, and said:

"Now, I don't think there is any question that Mr. Williams did come in here on the 25th day of August and enter a plea of not guilty to this offense, and by so doing he has waived any defenses that might appear in the execution of the arrest and in matters that might be attacked by a motion to quash, but this jury has nothing to do with anything of that kind, and I can't permit argument of counsel or questioning of witnesses that leads to that point.

"Now, that is one reason why I sustained the objection raised by the prosecutor to the questioning of these officers about how the arrest was made, not necessarily how it was made, but if they knew that they had to have a warrant and things of that kind."

It is settled law that the arresting officer was authorized in arresting defendant without a warrant, whom he "found violating the law," and hold him for a reasonable time, as he did, until a warrant for his arrest could be procured. See *State* v. *Marshall,* 61 Ohio Law Abs., 568, 105 N. E. (2d), 891; and *Columbus* v. *Glenn,* 60 Ohio Law Abs., 449, 102 N. E. (2d), 279.

In failing to file a motion to quash the warrant for arrest and in proceeding to plead to the affidavit, defendant waived any error due to his arrest without first obtaining an affidavit.

The trial judge did not err to defendant's prejudice as urged in the assignment of error under discussion.

In the general charge the jury was told:

"You will have appropriate forms of verdict to make the conclusion that may be reached under the

evidence and the law. One form provides for a finding of guilty, and the other form provides for a finding of not guilty. You will select the form of verdict that expresses the conclusion to which you have come, and you will have your form signed. It requires a unanimous agreement in a criminal case to return a verdict, so that you must have unanimous agreement in that respect."

Defendant contends that the charge of the trial judge "as a whole was vague and indefinite and more especially the above portion" thereof because:

"1. It left the jury no alternative but to bring out a verdict of guilty or innocent.

"2. It placed undue emphasis on a return of guilty.

"3. That the court should have instructed the jurors that any one of them should not yield a well-grounded conviction because it was not in accord with the conviction of his fellow juror, but under the above charge it left him no alternative.

"4. That the court said nothing regarding disagreement among the jurors, leaving the impression among the jurors, who are laymen, that the verdict must, by the court's own words, be one or the other.

"5. That the charge regarding the jury findings left any jurors having a possible minority view, to consider in addition to the law and the evidence the opinion of the majority of the jurors, in light of the charge, to bring in a verdict of guilty.

"6. That the above charge was not a proper cautionary instruction urging the jury to agree, and was further imbued with the element of coercion."

As a whole the evidence presented questions for the determination of the jury thus freeing the trial judge of the charge of commission of prejudicial error "in refusing to direct a verdict for the defendant at the end of all the evidence."

Reviewing the charge as a whole we conclude that defendant was not prejudiced thereby.

Defendant contends that since he "was of the colored race" the following testimony admitted over his objection and "statements made during trial by witnesses, the prosecutor and the court" subjected him to ridicule, was prejudicial and prevented him from having a fair trial, especially since the trial judge did not admonish the jury to disregard it, "for it is common knowledge that large numbers of the colored race live in and about the east end area described by the prosecutor."

Dr. Colla testifying was asked:

"Q. And, Dr. Colla, do muscle spasms and knee injuries and housemaid's knee and dandruff take on the smell of alcohol? A. No, sir.

"Mr. Sontich: Now, I object, he is casting my client to ridicule in front of this jury, and he is entitled to a fair trial."

Officer Masi testifying was asked:

"Q. And in some cases the individuals involved (in an accident) are very highly nervous? A. Yes, he could have been one of them. He isn't excluded from the human race."

We find nothing prejudicial in this, although the remark was not called for.

Officer Masi testifying further was asked:

"Q. Have you ever worked the east end beat of Youngstown?

"Mr. Sontich: I object.

"The court: Well, I think maybe you are going a little far astray, Mr. Prosecutor; sustained.

"Mr. Sontich: Very far."

We find no error here.

The record submitted to us indicates no misconduct on the part of plaintiff's counsel.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRIFFITH, P. J., PHILLIPS and NICHOLS, JJ., concur.