CITY OF OREGON, APPELLEE, v. SZAKOVITS, APPELLANT.
CITY OF MARYSVILLE, APPELLEE, v. MICHAELIS, APPELLANT.

[Cite as Oregon v. Szakovits (1972), 32 Ohio St. 2d 271.]

(Nos. 72-158 and 72-301—Decided December 15, 1972.)

272

*Mr. John D. Garand,* for appellee in case No. 72-158.
*Mr. Loren G. Ishler,* for appellant in case No. 72-158.
*Mr. Robert O. Hamilton,* city solicitor, for appellee in case No. 72-301.
*Mr. John W. Dailey, Jr.,* for apellant in case No. 72-301.

*Per Curiam.* The issue in each case is whether a warrantless arrest for operating a motor vehicle while under

the influence of alcohol is illegal, if the operation of the vehicle is not actually viewed by the arresting officer.

R. C. 2935.03 states that "A . . . police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained."

In each case, appellant claims that the officer, before arrest, should have either obtained a warrant or viewed the actual operation of the vehicle.

Appellees, in effect, maintain that under the facts in each of these cases, police officers may legally arrest without a warrant. We agree.

The third paragraph of the syllabus in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, states:

"Although a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle in that condition."

This court reversed the conviction in *Mentor*. There is, however, a clear distinction between the facts in these cases and *Mentor*. In that case, the vehicle was parked on a private lot behind a church, away from the traveled roadway. Three other people were present inside the vehicle when the officer arrived. A passenger testified that he had been the driver, and not the defendant. There was no indication how long the vehicle had been parked. At page 146 in *Mentor*, the following appears:

"Chronology is an important element in 'drunken driving' cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle. . . .

"*Generally, each 'drunken driving' case is to be decided on its own particular and peculiar facts. . . .*"

The facts in each of the instant cases show that an accident occurred on a public street and that both appellants were injured. While at the scene, both voluntarily ad-

mitted to driving the vehicles. There was no question of appellants being visibly under the influence of alcohol.

After viewing the scene of the accident, and hearing appellants' admissions on a first-hand basis, the officers could reasonably conclude that each had been operating his vehicle shortly before the officers arrived. Coupled with the fact that appellants were obviously under the influence, the officers properly found each to have been violating an ordinance of the respective municipal corporations prohibiting driving while under the influence of alcohol.

In case No. 72-158, appellant maintains that the trial court should have granted his motion to suppress the evidence of his Breathalyzer test because (1) his arrest was illegal, and (2) no warrant was ever issued, citing *Mapp* v. *Ohio* (1961), 367 U. S. 643, and *Wong Sun* v. *United States* (1963), 371 U. S. 471.

Although we have heretofore concluded that appellant's arrest was valid, attention is directed to R. C. 4511.-191 which reads, in part, as follows:

"Any person who operates a motor vehicle upon the public highways in this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood if arrested for the offense of driving while under the influence of alcohol. *The test or tests shall be administered at the direction of a police officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways in this state while under the influence of alcohol . . . .*" (Emphasis supplied.)

In *Schmerber* v. *California* (1966), 384 U. S. 757, defendant was arrested for drunken driving following an accident in which he had apparently been one of the drivers. At the hospital, where defendant was taken, police directed a physician to administer a chemical test to determine defendant's blood-alcohol content. Defendant objected to the test. The court held that there was no unreasonable search, stating, at page 771: "Given these special facts, we

conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest."

See, also, *Piqua* v. *Hinger* (1968), 15 Ohio St. 2d 110, which held blood-alcohol tests to be real or physical evidence, not protected by the constitutional privilege against self-incrimination. Therefore, the Breathalyzer test was not subject to the exclusionary rule on such basis.

We affirm the conviction in each case.

*Judgments affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STERN, LEACH and BROWN, JJ., concur.

CORRIGAN, J., dissents.

LEACH, J., concurring. In *State* v. *Lewis* (1893), 50 Ohio St. 179, it was held that:

"Where * * * the officer was absent when * * * [the] offense was committed, and did not appear there until after the affray had ended, public order restored, and the guilty parties had departed from the vicinity, and all the information the officer had of the affray and of the parties to it, was the statements of by-standers who witnessed it, he has no authority in law to pursue and arrest the persons charged with the offense without first obtaining a warrant therefor."

The holding in *Lewis* was predicated upon the conclusion that the power to arrest without warrant for breach of peace or other minor offense is given in order to maintain the public peace; that it therefore ceases when the offense is an accomplished fact which can no longer be prevented.

In the instant cases, the presence of an intoxicated individual in, or in the vicinity of, an automobile which obviously had been driven by him clearly indicates that he was intoxicated while driving. Under such circumstances, I am of the opinion that the offense is not "an accomplished

fact," which could no longer be prevented since such individuals could have easily resumed driving, in such intoxicated condition, unless prevented from doing so by the officer. Thus, I am of the opinion that, even as to the offense of driving while intoxicated, the defendants herein were "found violating a law of this state, or an ordinance of a municipal corporation" within the purview of R. C. 2935.-03. Here, knowledge by the officer of the violation is acquired through his own senses. See 5 American Jurisprudence 2d, 721 *et seq.*, Section 31, Arrest (What amounts to committing offense in officer's presence).

In any event, I think it clear that the officers were empowered to arrest for intoxication and that the validity of the arrest is not dependent upon the understanding of the arresting officer as to his authority to arrest for driving while intoxicated, or even as to his intent with respect thereto. In this aspect of the case I am in full agreement with the following statement of Crawford, J., in *State* v. *Hatfield* (1965), 1 Ohio App. 2d 346, at pages 347 and 348:

"* * * It is argued that defendant was arrested for driving while intoxicated by an officer who did not actually see him committing that offense. It is no answer to this contention to say that the circumstances pointed overwhelmingly to guilt.

"However, the answer does lie in the fact that the defendant was 'found violating a law of this state' as required in Section 2935.03, Revised Code, for he was 'found in a state of intoxication,' a misdemeanor under Section 3773.22, Revised Code. Therefore, it was lawful for the patrolman to arrest him. It mattered not what charge was thereafter filed or whether any charge was filed, if the original arrest was lawful. *City of Columbus* v. *Glenn* (1950), 60 Ohio Law Abs. 449; *State* v. *Williams* (1954), 98 Ohio App. 513.

"In each of these cases cited there is a syllabus indicating that a police officer may arrest without a warrant a person found in a state of intoxication who admits driving a motor vehicle which has been involved in a collision.

However, the admission by the accused that he was operating a motor vehicle is not necessary to authorize the arrest. As stated by Judge Miller in the opinion in *Columbus* v. *Glenn, supra,* 'The fact that he was found in a state of intoxication was sufficient to warrant the officer to make the arrest. Whether or not any charges were ever filed would not go to the arrest *ab initio.* It is our conclusion that the arrest in this instance was not illegal.'

"If one is found by a police officer committing a misdemeanor, he may be lawfully arrested, charged with that or any other misdemeanor, or charged with no offense whatsoever, without the arrest being thereby rendered illegal. Many an offender has been lawfully apprehended for a minor traffic violation and found upon examination to be guilty of another offense or offenses, either felonies or misdemeanors, and either related or unrelated to the misdemeanor witnessed by the officer and justifying the original arrest. If other misdemeanors are thus discovered, the offender enjoys no immunity from prosecution for them because they were not committed in the presence of the arresting officer. If the initial arrest was lawful he has suffered no deprivation of his rights."

O'NEILL, C. J., concurs in the foregoing concurring opinion.

CORRIGAN, J., dissenting. I am compelled to dissent in case No. 72-158 for the very patent reasons reflected by the record before us that the arrest of the appellant without a warrant was without probable cause under R. C. 2935.-03,* and that there is an absence of proof of appellant's

---

*R. C. 2935.03 reads as follows:

"A sheriff, deputy sheriff, marshal, deputy marshal, or police officer shall arrest and detain a person found violating a law of this state, or an ordinance of a municipal corporation, until a warrant can be obtained.

"When there has been a violation or there is reasonable ground to believe there has been a violation of Section 2901.25, 2907.20, 2909.12, insofar [as] it relates to shooting at trains, motor vehicles, or vessels,

operating a vehicle while under the influence of intoxicating liquor.

Appellant's motion to suppress the evidence, which was overruled, challenges the legality of the arrest.

The record establishes that the arresting police officer, Patrolman Dickenson, arrived at 1:50 a. m. at the scene of a collision between two vehicles, one of which had struck the rear of the other, in the city of Oregon. When the officer got there, there were no individuals in either of the vehicles involved. There were individuals standing around, and he inquired as to who was the driver of the rear vehicle. The appellant came forward and identified himself as the driver. The police officer then asked appellant to come back to the squad car. At that time, the officer noticed "* * * that the man's speech was somewhat slurred when I spoke with him. He was a little unstable on his feet and somewhat incoherent. He had to be told a couple of times to come back to the police car." In his opinion, the "* * * man appeared to be under the influence of some sort of intoxicant from his physical appearance."

At the trial, the arresting officer testified that he took a statement from defendant, "as to how the accident occurred." This statement is not in the record before us. These questions were then asked of the officer:

"Q. At this time, did you charge him with any offense?

"A. Not until we had his complete statement to what happened.

"Q. After that, did you charge him?

---

or Section 2923.01 of the Revised Code, or of any ordinance of a municipal corporation which substantially incorporates any offense contained in such chapters or section, a sheriff, deputy sheriff, marshal, deputy marshal, or police officer may arrest without a warrant any person whom he has reasonable cause to believe is guilty of the violation, and detain him until a warrant can be obtained.

"A constable within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained."

"A. Yes.

"Q. What did you then do?

"A. Well, he was informed that he was going to be transported to our station being charged with operating a vehicle under the influence of intoxicants and I informed his wife, who was with him, what was going to happen. He was brought to the station and he was given the standard physical and Breathalyzer test for intoxication."

Upon cross-examination of this police officer, he testified as follows:

"Q. * * * You say you did not observe anybody driving any cars, is that right?

"A. Yes, sir.

"Q. You arrested the defendant?

"A. Yes, sir.

"Q. You have a warrant?

"A. No, sir.

"Q. Did you issue [sic] a warrant after you got him down here?

"A. No, sir, affidavit citation.

"Q. Has there ever been a warrant issued?

"A. No, sir.

"Q. Just the affidavit?

"A. Yes, sir.

"Q. You did not see the man driving?

"A. No, sir.

"Q. Did your partner see him drive it?

"A. No, sir."

It is noteworthy that Officer Dickenson did not arrest the defendant for intoxication. The record is also without any warning to defendant relative to the consequences of refusing the test provided for under R. C. 4511.191(C) and (D).

The appellant was not observed in the operation of the automobile. There is absolutely not a particle of evidence as to the time of operating the motor vehicle, or as to the time when there was evidence to show some influence of intoxicants. The record fails to show how long before

the police arrived that the alleged rear-end collision occurred. It also fails to show the alleged intoxicated condition of defendant at the time the collision allegedly occurred, or what the defendant was doing in the indefinite period between the time the alleged collision occurred and the precise moment when the police arrived.

With such a chronological lacuna gapping the proof of the alleged violation in the record before us, I have grave doubts that due process was accorded this defendant. One of the essential elements of this offense, which the state must prove beyond a reasonable doubt, is the answer to the question: "Was the defendant found operating a vehicle at the time and place of his arrest?" Part of the evidence, which I must assume satisfies the majority on this essential element, is circumstantial. But circumstantial evidence must be consistent only with the hypothesis of guilt; if it is consistent with any hypothesis of innocence, then it fails as proof of that essential element. Certainly, if the rear-end collision occurred some substantial time before the police arrived at the scene, then the appellant could have consumed intoxicants after he had the collision, accounting for the results of the test. But the record does not provide a continuum of proof, beyond a reasonable doubt, as to each essential element of the crime of operating a motor vehicle while under the influence of intoxicating liquor.

As Justice Zimmerman pointed out in *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, chronology is an important element in a prosecution for driving while intoxicated, and relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operation of a vehicle.

In paragraph two of the syllabus in *Giordano,* this court held:

"Penal statutes and ordinances are to be interpreted and applied strictly against the accuser and liberally in favor of the accused, and where the accused is charged under a statute or ordinance with operating a motor ve-

hicle while under the influence of intoxicating liquor—a misdemeanor—the burden rests upon the prosecution to prove every essential element of the offense beyond a reasonable doubt.''

Accordingly, based on the factual pattern presented to us, I conclude that under statutory and due process requirements the arrest here was invalid; that appellant's motion to suppress should have been sustained; and that there was a failure of proof beyond a reasonable doubt as to each essential element of the crime charged.

I would reverse the judgment of the Court of Appeals and discharge the defendant.

