THE STATE OF OHIO, APPELLANT, *v.* HENDERSON, APPELLEE.

[Cite as State *v.* Henderson (1990), 51 Ohio St. 3d 54.]

(No. 89-450—Submitted March 7, 1990—Decided May 9, 1990.)

*Dennis M. Coyne,* assistant police prosecutor, for appellant.

*Theodore R. Klammer* and *Martin A. Klammer,* for appellee.

H. BROWN, J. The court below reversed appellee's conviction and entered a judgment of acquittal on the ground that Deputy White's arrest of appellee was illegal. For the reasons which follow, we find that the arrest was legal and reverse the judgment of the appellate court.

I

As a preliminary matter, we note

that an illegal arrest does not invalidate a subsequent conviction which is otherwise proper. *Gerstein* v. *Pugh* (1975), 420 U.S. 103, 119; *Frisbie* v. *Collins* (1952), 342 U.S. 519; *Ker* v. *Illinois* (1886), 119 U.S. 436; *Sopko* v. *Maxwell* (1965), 3 Ohio St. 2d 123, 32 O.O. 2d 99, 209 N.E. 2d 201; *Caldwell* v. *Haskins* (1964), 176 Ohio St. 261, 27 O.O. 2d 160, 199 N.E. 2d 116; *Henderson* v. *Maxwell* (1964), 176 Ohio St. 187, 27 O.O. 2d 59, 198 N.E. 2d 456; *Wells* v. *Maxwell* (1963), 174 Ohio St. 198, 22 O.O. 2d 147, 188 N.E. 2d 160; *Brown* v. *Maxwell* (1962), 174 Ohio St. 29, 21 O.O. 2d 285, 186 N.E. 2d 612; *Westlake* v. *Vilfroy* (1983), 11 Ohio App. 3d 26, 11 OBR 39, 462 N.E. 2d 1241. However, evidence obtained as a result of an illegal arrest is inadmissible at trial. *Wong Sun* v. *United States* (1963), 371 U.S. 471. Therefore, we must determine the legality of appellee's arrest in order to determine what evidence was admissible against him.

## II

As a general rule, an officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. *State* v. *Lewis* (1893), 50 Ohio St. 179, 33 N.E. 405. In *Oregon* v. *Szakovits* (1972), 32 Ohio St. 2d 271, 61 O.O. 2d 496, 291 N.E. 2d 742, we recognized an exception to this rule where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs. As a concurring Justice explained:

"The holding in *Lewis* was predicated upon the conclusion that the power to arrest without warrant for breach of peace or other minor offense is given in order to maintain the public peace; that it therefore ceases when the offense is an accomplished fact which can no longer be prevented.

"* * * [T]he presence of an intoxicated individual in, or in the vicinity of, an automobile which obviously had been driven by him clearly indicates that he was intoxicated while driving. Under such circumstances, * * * the offense is not 'an accomplished fact' which could no longer be prevented since such individuals could have easily resumed driving, in such intoxicated condition, unless prevented from doing so by the officer." *Id.* at 275-276, 61 O.O. 2d at 498, 291 N.E. 2d at 745 (Leach, J., concurring).

The court below recognized the *Szakovits* exception, but believed the "admissible facts and circumstances" of this case were insufficient to invoke the exception. We disagree. Officer Hilderbrand informed Deputy White that appellee had been driving while intoxicated. White observed appellee directly, and noted an odor of alcohol on his breath. White also had difficulty in understanding appellee's speech. Appellee failed the field sobriety tests. White spoke to appellee about the towing of his truck. Thus, Deputy White could have reasonably concluded that appellee had been driving the truck while intoxicated, even if White did not have the benefit of Hilderbrand's observations. White therefore had the power to arrest appellee under our holding in *Szakovits*.

## III

*Lewis, supra,* specifically held that a police officer could not make a warrantless arrest for a misdemeanor which was not committed in his presence based on the statements of witnesses to the crime. The court below concluded that *Lewis* was controlling because Deputy White first learned of appellee's "bad driving" solely through the statements of Officer Hilderbrand. We find this conclusion flawed.

Lewis was a village marshal ac-

cused of murdering a suspect during an attempted arrest. In *Lewis*, the issue was whether defendant was engaged in a lawful arrest when the suspect was killed. The evidence showed that the suspect had gotten into a fight in a saloon. Lewis was summoned to break up the altercation, but by the time he arrived, "the parties to it had gone and good order had been restored * * *." *Id.* at 184, 33 N.E. at 406. Based on information given by witnesses, Lewis pursued the suspect and attempted to arrest him without first securing a warrant. We held that Lewis had no legal authority to make a warrantless arrest for a breach of the peace based solely on the statements of witnesses. *Id.* at syllabus.

There are significant differences between *Lewis* and the instant case. Here, Deputy White relied on information provided by a fellow law enforcement officer investigating the incident. "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States* v. *Ventresca* (1965), 380 U.S. 102, 111. "Certainly police officers called upon to aid other officers in executing * * * warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause." *Whiteley* v. *Warden* (1971), 401 U.S. 560, 568. If a fellow officer's statements can establish probable cause for the issuance of a warrant, they should also establish probable cause for a warrantless arrest. So long as "the law enforcement system as a whole has complied with the Fourth Amendment" and pos-

sesses facts adding up to probable cause, the arrest will be valid even though the arresting officer alone does not possess these facts. 1 LaFave & Israel, Criminal Procedure (1984) 208, Section 3.3(e); see, also, *Whiteley, supra,* at 568-569.

Here, Officer Hilderbrand saw appellee driving a damaged vehicle on the wrong side of the road. After appellee was stopped, he appeared to be intoxicated. If Hilderbrand had chosen to arrest appellee upon stopping him, there would be no question regarding probable cause.[1] White, who was investigating the same alleged offenses, was entitled to rely on the information supplied at the scene by Hilderbrand.

If we were to hold otherwise, a police officer could never legally arrest a fleeing misdemeanant in response to a call for help from a fellow officer who saw the offense take place. Nothing in the Fourth Amendment or the case law requires us to reach such an undesirable result. Accordingly, we hold that information supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest.

### IV

Because appellee's arrest was legal, the "fruit of the poisonous tree" doctrine does not operate to exclude evidence obtained as a result of the arrest. It is undisputed that appellee's statements to the officers were inadmissible due to the officers' failure to advise him of his *Miranda* rights. However, the nonverbal results of appellee's breathalyzer and field sobriety tests are not self-incriminating statements. See *Schmerber* v. *California*

---

[1] The record does not explain why Officer Hilderbrand chose not to arrest appellee, nor why the other officers chose to wait for Deputy White instead of arresting appellee themselves.

(1966), 384 U.S. 757; *State* v. *Starnes* (1970), 21 Ohio St. 2d 38, 50 O.O. 2d 84, 254 N.E. 2d 675; *Westerville* v. *Cunningham* (1968), 15 Ohio St. 2d 121, 44 O.O. 2d 119, 239 N.E. 2d 40. Consequently, they are not rendered inadmissible by the *Miranda* violation. Additionally, Officer Hilderbrand's observations of appellee's driving, his apparently intoxicated state, and the damaged condition of his truck, are admissible.

The admissible evidence in the record[2] is sufficient to support a finding of guilt beyond a reasonable doubt. Accordingly, we reverse the judgment of the court of appeals and reinstate appellee's conviction and sentence.

*Judgment reversed.*

MOYER, C.J., KOEHLER, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

RICHARD N. KOEHLER, J., of the Twelfth Appellate District, sitting for SWEENEY, J.

---

[2] The record as presented to this court and the court below contains only a transcript of the suppression hearing. Consequently, we do not know if the state had other admissible evidence tending to prove its case.