OPINION
This is an accelerated appeal taken from a final judgment of the Ravenna Division of the Portage County Municipal Court. Appellant, Janice L. Holland, appeals from her conviction for driving while under the influence of alcohol following a bench trial.
At approximately 4:19 a.m. on January 18, 1998, Officer Christopher Petro ("Officer Petro") of the Streetsboro Police Department received a dispatch regarding a vehicle that had gone off the side of Aurora-Hudson Road within the city limits of Streetsboro, Ohio. Upon responding to the scene, Officer Petro discovered a minivan that had come to rest against a stand of trees approximately eight feet off the roadway. The minivan was damaged on the front passenger side from the collision. No one was present at the scene of the accident when Officer Petro arrived. Consequently, the officer ran a check on the license plate and discovered that the minivan was registered to appellant.
Officer Petro had the vehicle towed to an impound yard. After doing so, he returned to the police station in order to complete an accident report. While there, Officer Petro received a phone call from James Tackett ("Tackett"). Tackett identified himself as a tow truck operator and inquired as to whether the police had just towed a vehicle in the Streetsboro vicinity. Officer Petro answered affirmatively. Tackett then indicated that he, along with the driver of the minivan, had been searching for the vehicle in his tow truck. Officer Petro asked Tackett to transport the driver to the police station.
Tackett and appellant arrived in the lobby of the police station at approximately 6:20 a.m. Upon meeting appellant, the officer immediately noticed that she smelled of alcohol, her eyes were glossy, and she appeared confused. Given this, Officer Petro read the standard Miranda warnings to appellant before he began questioning her in relation to the accident investigation. Although appellant was informed that she did not have to answer any questions, she decided to respond to the queries posed to her by Officer Petro regarding the night's events.
During the course of the questioning, appellant indicated that she was driving the minivan at the time of the accident. Her sister-in-law was a passenger in the vehicle. The two women had dined out earlier in the evening and were headed to the residence of appellant's mother in Stow, Summit County, Ohio. Appellant admitted that she had consumed two alcoholic beverages prior to the accident, but she claimed that the minivan slid off the road after hitting an icy patch.
Based on the interview, Officer Petro asked appellant to take a Breathalyzer test. Appellant submitted to the test at 6:48 a.m. The machine registered a breath-alcohol content of .116. Officer Petro thereafter placed appellant under arrest and issued two traffic citations: (1) driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1); and (2) failure to control as proscribed by R.C. 4511.20.2.
Pursuant to the citations, appellant was summoned for her initial appearance in the trial court on January 23, 1998. At this proceeding, appellant pled not guilty to the charges and was released on a personal recognizance bond.
The matter proceeded to a bench trial on May 29, 1998. The state presented the testimony of three witnesses. The first witness was Dr. James Ferguson ("Dr. Ferguson"). He was a toxicologist who presented scientific testimony regarding the approximate amount of alcohol that appellant had in her system at the time of the accident based on the fact that the Breathalyzer machine registered .116 at 6:48 a.m. His projection was based upon appellant's approximate height and weight and Officer Petro's estimate that the accident had occurred at about 4:10 a.m. Dr. Ferguson concluded, within a reasonable degree of scientific certainty, that appellant had six to seven shots of eighty proof alcohol in her bloodstream at the time of the accident.
Officer Petro also testified on behalf of the prosecution. The officer indicated that he had not seen any signs of the accident when he drove down Aurora-Hudson Road at approximately 3:55 a.m. while on routine patrol. At 4:19 a.m., he received the dispatch about a vehicle that had gone off the roadway, and he responded to the scene at 4:27 a.m. By that time, however, the van had been abandoned. Based on these observations, Officer Petro estimated the time of the accident to be 4:10 a.m.
Officer Petro further recounted how appellant smelled of alcohol and had glossy eyes upon arriving at the police station with Tackett. The officer expressly testified that appellant admitted to operating the vehicle and to consuming alcohol prior to the accident. He also stated that appellant denied having any alcoholic beverages between the time of the accident and her subsequent arrival at the police station at 6:20 a.m.
The final witness to testify for the state was Tackett. He described how he was dispatched by the tow truck company to the residence of appellant's mother in Stow. Upon arriving, Tackett picked up appellant, and they went in search of the minivan. Although appellant remembered that the vehicle was somewhere on Aurora-Hudson Road, she was confused and could not recall precisely where the accident had taken place. Tackett testified that appellant's eyes were noticeably glossy and she had an odor of alcohol on her person. Eventually, Tackett and appellant were able to find the spot of the accident, but the minivan had already been towed by that time.
Tackett then described how he transported appellant to the police station in his tow truck. During his testimony, Tackett specifically indicated that appellant admitted to Officer Petro that she was driving the minivan and that she had consumed alcohol prior to the accident.
The only witness to testify for the defense was Patricia Kerchelich ("Kerchelich"), appellant's mother. Kerchelich described how appellant and appellant's sister-in-law showed up unexpectedly at her house in the early morning hours of January 18, 1998. The two women had hitched a ride there with another motorist following the accident. Kerchelich testified that appellant was upset about wrecking the minivan. She made a pot of coffee, and the two women commenced talking while waiting for Tackett to arrive. In order to help calm her daughter's nerves, Kerchelich claimed that she added approximately two shots of brandy to appellant's coffee. Kerchelich testified that she did this with appellant's knowledge. On cross-examination, however, Kerchelich conceded that she did not know how much alcohol appellant had to drink before the accident.
Following the presentation of evidence and closing arguments, the trial court found appellant guilty of driving while under the influence of alcohol and failure to control.[1] The matter came on for sentencing on June 19, 1998. The trial court merged the offenses for purposes of sentencing. After doing so, the trial court sentenced appellant to ten days in jail and a $450 fine. The jail time and $250 of the fine were suspended. The trial court stayed the execution of the sentence pending an appeal.
From this judgment, appellant filed a timely notice of appeal with this court. She now asserts the following assignment of error:
 "The trial court's decision in convicting defendant-appellant was contrary to the manifest weight of the evidence presented at trial."
In her sole assignment of error, appellant posits that the trial court's judgment was against the manifest weight of the evidence introduced at trial. Although not expressly stated in the assignment, appellant is only challenging her conviction for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). Thus, we need not address appellant's conviction for failure to control under R.C. 4511.20.2.
The test for whether a criminal conviction runs counter to the weight of the evidence is as follows:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin
(1983), 20 Ohio App.3d 172, 175. See, also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring); State v. Patterson (May 22, 1998), Trumbull App. No. 96-T-5439, unreported, at 14, 1998 WL 310737.
As a general rule, the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When reviewing questions of weight, the role of an appellate court is to engage in a limited weighing of the evidence adduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Patterson, 1998 WL 310737, at 14.
In the case sub judice, appellant was convicted of driving while under the influence of alcohol in violation of R.C.4511.19(A)(1). This statute provides that "no person shall operate any vehicle * * * within this state, if * * * [t]he person is under the influence of alcohol * * *." The state had the burden of persuasion with respect to each element of the offense.[2]
It is uncontroverted that appellant was operating the minivan within the state. Officer Petro and Tackett both testified that appellant admitted to driving the vehicle at the time of the accident. Even appellant does not dispute this. Thus, the question presented is whether the evidence introduced by the state demonstrated beyond a reasonable doubt that appellant was under the influence of alcohol when the accident occurred.
In her brief, appellant basically makes a twofold argument: (1) Officer Petro's testimony was not enough to convict appellant of driving while under the influence of alcohol because he did not witness her operating the minivan and, therefore, could not provide any insight into her level of impairment at the time of the accident; and (2) the trial court did not give enough credence to Kerchelich's testimony to the effect that appellant consumed two shots of brandy at her mother's house following the accident. We will consider the arguments in inverse order.
With regard to Kerchelich, she did testify at trial that she mixed the equivalent of two brandy shots into appellant's coffee after the accident. According to Kerchelich, she allegedly did this with appellant's knowledge. The trial court, however, expressly stated that it did not believe Kerchelich's testimony at the conclusion of the trial when the court adjudged appellant to be guilty.
As stated previously, the credibility of witnesses is within the province of the trier of fact. In this case, the trial court was clearly within its discretion to disbelieve Kerchelich's claim that she mixed two shots of brandy into the coffee in order to calm appellant's nerves following the accident. Obviously, Kerchelich had a compelling reason to be biased in favor of her daughter. However, even if Kerchelich had been believed, her testimony would not have negated the possibility that appellant was indeed under the influence of alcohol at the time of the accident.
We would note that Officer Petro specifically testified that he asked appellant whether she had anything to drink between the time of the accident and the time that she arrived at the police station looking for her minivan. According to the officer, appellant indicated that she did not consume any alcoholic beverages after the accident.
It is true that Officer Petro did not witness appellant driving the minivan. Consequently, he did not observe any of the telltale signs of erratic driving so commonly associated with intoxicated drivers. As a general rule, a police officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. State v. Henderson (1990),51 Ohio St.3d 54, 56, citing State v. Lewis (1893), 50 Ohio St. 179.
In Oregon v. Szakovits (1972), 32 Ohio St.2d 271, however, the Supreme Court of Ohio recognized an exception to this rule where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs. Pursuant to Szakovits, "all facts and circumstances" must be taken into account when determining whether there was a valid basis for arresting a motorist for driving while under the influence of alcohol when the police officer did not observe the motorist driving the vehicle.
In the case at bar, appellant does not challenge the constitutionality of her arrest. Rather, she asserts that the evidence presented at trial was not incriminating enough to sustain her conviction when balanced against the presumption of innocence accorded to criminal defendants.
Although appellant left the scene of the accident, the state had Officer Petro's subsequent observations of her at the police station. At trial, Officer Petro testified that he noticed immediately during his meeting with appellant that she smelled of alcohol. The officer also noted that appellant's eyes were glossy and that she appeared to be confused during the interview.
In any prosecution for drunk driving, the state does not have to prove actual impaired driving; instead, it must only show impaired driving ability. To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired. State v. Richards (Oct. 15, 1999), Portage App. No. 98-P-0069, unreported, at 8-9, 1999 Ohio App. LEXIS 4860; In reLitterst (June 26, 1998), Lake App. Nos. 97-L-135 and 97-L-136, unreported, at 5, 1998 WL 556326; State v. Wargo (Oct. 31, 1997), Trumbull App. No. 96-T-5528, unreported, at 3, 1997 WL 703373. In the instant matter, Officer Petro gave an account of the physiological factors that led him to believe that appellant was still intoxicated when she arrived at the police station more than two hours after the accident.
It is also well-established that a police officer may provide lay testimony under Evid.R. 701 as to his or her opinion concerning a defendant's state of intoxication. In re Litterst, 1998 WL 556326, at 5; Wargo, 1997 WL 703373, at 3. Under Evid.R. 701, a lay witness can give opinion testimony if the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
Sobriety or lack thereof is commonly recognized by courts to be within the perception of a lay witness. In the present case, Officer Petro stated his opinion that appellant was impaired. This opinion testimony was properly admitted under Evid.R. 701.[3]
Thus, Officer Petro testified regarding the physiological factors that suggested intoxication and stated his opinion that appellant was impaired by alcohol. Officer Petro's opinion testimony was certainly credible evidence tending to support the verdict reached by the trial court, especially when it was coupled with appellant's two key admissions to the officer that she had consumed alcoholic beverages prior to the accident and that she had no alcohol to drink after the accident.
Beyond Officer Petro's testimony, the state called Tackett, the tow truck driver, as a witness. Tackett supported the officer's description by testifying that appellant had glossy eyes and an odor of alcohol on her person when he picked her up. In addition, Tackett also testified that he heard appellant admit that she had consumed alcohol prior to the accident when she was being interviewed by Officer Petro at the police station.
Finally, the state called Dr. Ferguson as an expert witness. He testified regarding the amount of alcohol that appellant had in her system at the time of the accident based on the fact that the Breathalyzer machine registered .116 at 6:48 a.m. Numerically, the two drinks that appellant admitted to consuming prior to the accident and the two shots of brandy that her mother claimed to have added to the coffee do not add up to the six or seven shots of eighty proof alcohol as calculated by Dr. Ferguson. In other words, there was credible evidence to suggest that appellant consumed even more alcohol than she admitted.
It must be noted that Officer Petro did not cite appellant for driving with a prohibited concentration of alcohol in her breath under R.C. 4511.19(A)(3) because the Breathalyzer test was conducted more than two hours after the accident. R.C. 4511.19(D) establishes a two-hour time frame for the collection of any bodily substances needed for alcohol or drug testing subsequent to the time of the alleged violation. The Supreme Court of Ohio has held that in prosecutions involving prohibited levels of alcohol under R.C. 4511.19(A)(2), (A)(3), (A)(4), or a similar municipal ordinance, the results of the chemical analysis are admissible only if the bodily substance was withdrawn within two hours of the time of the alleged violation. Newark v. Lucas (1988), 40 Ohio St.3d 100, paragraph one of the syllabus.
Given this, Officer Petro cited appellant for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). Although alcohol test results taken beyond the two-hour window are inadmissible to support a prosecution for a per se violation under R.C. 4511.19(A)(2) through (A)(4), such test results may be admitted into evidence if a proper foundation is laid by expert testimony in prosecutions for driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1) or a similar municipal ordinance. Id. at paragraph two of the syllabus.
In the case at hand, Dr. Ferguson provided the expert testimony necessary to lay the proper foundation for the admission of the Breathalyzer test results. Thus, the trial court could properly consider that appellant registered .116 on the Breathalyzer machine at 6:48 a.m., which was more than two hours after the accident.
Upon reviewing the entire record and evaluating the cumulative weight of the evidence, we conclude that the trial court's decision did not constitute a manifest miscarriage of justice. To the contrary, the overwhelming weight of the evidence supported appellant's conviction for driving while under the influence of alcohol.
Based on the foregoing analysis, the assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
NADER, J., MAHONEY, J., (JOSEPH), Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] With regard to the D.U.I. conviction, we note that the judgment entry might actually be construed as suggesting that the trial court found appellant guilty of violating R.C.4511.19(A)(1) and (A)(3). The judgment entry in question, however, is a pre-printed document used in the Portage County Municipal Court in first offense D.U.I. cases. The form language on the entry states that the trial court found appellant guilty of a first offense D.U.I. in violation of "O.R.C. 4511.19(A)(1) or (A)(3)." The trial court should have clearly circled the (A)(1) option, thereby indicating the applicable code section that had been violated. In this case, though, the trial court neglected to mark with any clarity the statutory section under which appellant was convicted. Despite this, we do not believe that the judgment entry actually indicates that the trial court found appellant guilty of violating both R.C. 4511.19(A)(1) and (A)(3). Because appellant was never charged with violating (A)(3), it is apparent that the trial court could have only convicted her of violating (A)(1).
[2] Appellant challenges only the weight of the evidence, not the sufficiency thereof. Thus, we are not concerned with whether the prosecution carried its burden of production with respect to the quantum of the evidence. Rather, our analysis will focus on whether the trial court clearly erred in weighing the evidence and in evaluating the credibility of the witnesses who testified.
[3] A police officer also has the training and experience to qualify as an expert witness under Evid.R. 702. Inre Litterst, 1998 WL 556326, at 5, fn. 3; Wargo, 1997 WL 703373, at 3, fn. 2. In order to be admissible under Evid.R. 702, the prosecution must lay a proper foundation qualifying the police officer as an expert in the area of intoxication by way of the officer's job experience and any special training the officer may have received.