This is an appeal from the Portage County Municipal Court, Ravenna Division. Appellant, Christian P. Hale, appeals the trial court's judgment entry overruling his motion to suppress and finding him guilty of driving under the influence ("DUI").
On October 18, 1998, appellant was charged with failure to control, in violation of § 434.08 of the Ravenna Ordinance; DUI, in violation of § 434.01(A)(1) of Ravenna Ordinance; and driving with a prohibited concentration of alcohol in his breath, in violation of § 434.01(A)(3) of the Ravenna Ordinance. On December 1, 1998, he filed a motion to suppress. A suppression hearing was conducted on February 1, 1999.
At the suppression hearing, Sergeant Timothy L. Adkins ("Sgt. Adkins"), a thirteen-year veteran police officer with the city of Ravenna testified that on October 18, 1998, at about 1:50 a.m., he was on routine patrol. He related that he received a call from dispatch indicating that there were two citizens, John Nortum ("Nortum") and Brenda Phelps ("Phelps"), who informed dispatch that they were "following a suspected drunk driver." Sgt. Adkins revealed after he made contact with the citizens, they directed him to 409 South Prospect, which was appellant's residence. When he arrived there, he observed appellant near the passenger door of the automobile unloading groceries. Nortum and Phelps were also at the scene, and they identified appellant as the driver of the vehicle.
Moreover, Sgt. Adkins felt the hood of the car and discovered that it was still warm. When he approached appellant, he detected a strong odor of alcohol emanating from appellant's person. Appellant was also "very unsteady on his feet and kept bracing himself against the car." Based on the information received from Nortum and Phelps, Sgt. Adkins asked appellant if he had been to the Giant Eagle before he went home. He informed Sgt. Adkins that he had just been to the store.
Sgt. Adkins questioned appellant as to whether he had driven into some carts at Giant Eagle. Appellant replied that he "did that on purpose. [He] saw the carts, and wanted to hit them." Sgt. Adkins proceeded to ask appellant if he had had anything to drink since he had been home and appellant said no. Thereafter, he had appellant perform some field sobriety tests, but appellant did not do well on them.[1] Sgt. Adkins recalled that appellant was very unsteady on his feet and that he leaned on the automobile to hold himself up. Later, appellant voluntarily stated that he knew this would happen sooner or later because he had been driving drunk for years.
After appellant performed the sobriety tests, Sgt. Adkins determined that appellant was under the influence of alcohol. He placed appellant into custody, took him to the police station, and read him his Miranda rights. He agreed to submit to a Breathalyzer test, which revealed a BAC of .171 percent. This resulted in appellant being charged with a violation under § 434.01(A)(3) of the Ravenna Ordinance.
On cross-examination, Sgt. Adkins admitted that the only observation he made of appellant was when appellant was out of his vehicle in his driveway. He never saw appellant operate the car. He also stated that he did not read appellant his rights at the scene. The first time appellant was read his rights was at the police station. At the conclusion of the suppression hearing, the trial court overruled appellant's motion.On July 30, 1999, appellant entered a plea of no contest to the charge under § 434.01(A)(1), and was found guilty. The city of Ravenna moved to dismiss the other charges, which the trial court granted. On that same date, the trial court sentenced appellant to a term of ninety days in jail, fined him $450, and ordered him to pay costs. The court suspended eighty-seven days of the sentence and $250 of the fine, provided that appellant attend DUI school and have no other alcohol related driving offense for two years. The court also imposed a six-month license suspension, but granted him occupational driving privileges. Appellant's sentence has been stayed pending appeal. Appellant filed this appeal and raises a single assignment of error:
 "The trial court erred in failing to sustain [appellant's] motion to suppress where the evidence in question was the product of an illegal and an invalid investigation and arrest."
Appellant contends that Sgt. Adkins did not have the requisite reasonable suspicion to justify an investigative stop of his vehicle. He also argues that the evidence that formed the basis for the citation was the fruit of an unconstitutional detention.
Generally, an officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. R.C. 2935.03; see, also, State v. Lewis (1893), 50 Ohio St. 179,185. In Oregon v. Szakovits (1972), 32 Ohio St.2d 271, the Supreme Court recognized "an exception" to this rule where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol under the types of circumstances set forth in that case. We note that in the Oregon companion cases, both the appellants admitted they were driving.
The Supreme Court of Ohio established three guidelines for evaluating DUI arrests when a police officer has not observed the accused driving. First, "`each "drunken driving" case is to be decided on its own particular and peculiar facts.'" Id. at 273 quoting Mentor v. Giordano (1967), 9 Ohio St.2d 140, 146; see, also, Xenia v. Manker (1984), 18 Ohio App.3d 9, 9. Second, "`[c]hronology is an important element in "drunken driving" cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle.'" Oregon at 273. Third, "`[a]lthough a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle * * *.'" Id. This court has found that "merely appearing to be too drunk to drive is not, in our opinion, enough to constitute probable cause for arrest." State v. Finch
(1985), 24 Ohio App.3d 38, 40.
As Oregon instructs, we have examined the particular facts of this case, and conclude that Sgt. Adkins had probable cause to arrest appellant for DUI. Since Sgt. Adkins did not actually observe appellant driving, probable cause to arrest him must be based upon all the facts and circumstances within the Sgt. Adkins' knowledge to cause a prudent person to believe that appellant had committed the offense. Absent this, he may not effectuate a valid arrest.
Here, Sgt. Adkins questioned appellant and established that he had operated the vehicle while intoxicated. Appellant expressly conceded that he had driven the vehicle a short time before he was encountered by Sgt. Adkins, and he also smelled of alcohol. Sgt. Adkins performed sobriety tests on appellant and stated that he performed poorly on all of them. Further, appellant voluntarily admitted that he had been driving drunk for years.[2]
Additionally, in the present case, although Sgt. Adkins did not observe appellant operating the vehicle, he had the statement of two citizens, Nortum and Phelps, who witnessed appellant operating his vehicle in a reckless manner. Both witnesses identified appellant as the driver of the vehicle.[3]
In Finch, 24 Ohio App.3d at 40, the court stated that when an officer does not witness the defendant driving in an unsafe manner, does not observe impaired motor coordination, and does not instruct the defendant to perform field sobriety tests, the officer does not have probable cause to arrest the driver for a violation of R.C. 4511.19. See, also, Warren v. King (Mar. 31, (1999), Trumbull App. Nos. 98-T-0108 and 98-T-0119, unreported, at 8. Therefore, the mere appearance of drunkenness is not sufficient to constitute probable cause for arrest for driving under the influence. Id.
In the case at bar, even though Sgt. Adkins did not observe appellant driving in an erratic or unsafe manner and did not witness impaired motor coordination, Nortum and Phelps saw appellant operate the vehicle recklessly. Furthermore, appellant admitted that he had not consumed any alcohol since he reached his residence. Sgt. Adkins viewed the scene of the incident and found appellant near the car. He felt the hood of appellant's auto and it was warm. He also detected a strong odor of alcohol emanating from appellant's person and noticed that appellant was very unsteady on his feet. Thus, there was a nexus regarding the relationship of events between the time appellant allegedly operated the vehicle and when he was found in a state of intoxication. Accordingly, pursuant to Oregon, we have examined the record in the instant matter and conclude that under the particular facts and circumstances of this case, Sgt. Adkins had probable cause to arrest appellant for driving while under the influence of alcohol.
Additionally, Oregon requires the evidence to show beyond a reasonable doubt that the accused operated a motor vehicle while intoxicated. Not only did appellant have an odor of alcohol and was he unsteady on his feet, but he also admitted that he had been drinking. This satisfies the Oregon "beyond a reasonable doubt" standard.
For the foregoing reasons, appellant's assignment of error is not well-taken. The judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
CHRISTLEY, J., NADER, J., concur.
[1] Sgt. Adkins testified that the normal three field sobriety tests he administers are the one-leg stand, the walk and turn, and the horizontal gaze nystagmus test. He believes that those are the three that he asked appellant to perform.
[2] Appellant made this comment before he was Mirandized. Miranda
warnings must be given prior to any custodial interrogation regardless of whether the individual is suspected of committing a felony or misdemeanor. Berkemer v. McCarty (1984), 468 U.S. 420,434; State v. Buchholz (1984), 11 Ohio St.3d 24, 28. Thus, even though the trial court may have erred by admitting the statement, any error that occurred was harmless since it did not prejudice appellant. There was enough other independent evidence to arrest appellant. Nonetheless, officers should be cautioned about questions that would transgress the dictates of Berkemer, particularly where such responses are a necessity for probable cause to arrest.
[3] Sgt. Adkins could have, in part, relied on the information of Nortum and Phelps to determine probable cause. Where a tip is from an anonymous caller, the tip alone will rarely provide the reasonable suspicion necessary for an investigative stop. Alabama v. White (1990), 496 U.S. 325, 329. However, if corroborated by independent police work, that tip may be a sufficient basis for the stop. Id. In contrast, where a tip is received from a known informant and the details of the tip are easily verifiable, that tip has greater indicia of reliability.Adams v. Williams (1972), 407 U.S. 143, 147. Nonetheless, each case must be evaluated under the totality of the circumstances.
Here, according to the evidence, Nortum and Phelps reported that appellant had run into some carts in the Giant Eagle parking lot. We can reasonably infer from these circumstances that they considered appellant a threat to themselves as well as to other motorists. Hence, they were motivated by their desire to eliminate a risk to the public's safety. These factors persuade us that their tip was trustworthy. They were identified citizens who based their knowledge of the facts they described upon their own observations as the events occurred. As a result, their tip merits a high degree of credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police corroboration. Accordingly, based upon this tip, the dispatch was issued. When Sgt. Adkins arrived near appellant's home, these witnesses identified appellant and his vehicle as the source of their call to the dispatcher regarding their observations of appellant's alleged significant erratic driving. Their tip and direct observations provided the basis for Sgt. Adkins to further investigate. This information coupled with the additional facts Sgt. Adkins derived and observed escalated into sufficient probable cause to arrest appellant.