OPINION
Bobby R. Johnson was charged with driving under suspension and driving under the influence of alcohol. After his motion to suppress evidence was overruled, Johnson entered pleas of no contest to the charges and was found guilty. The trial court disposed of the charges and Johnson appealed, advancing three assignments of error.
 1. BY DENYING THE MOTION TO SUPPRESS THE STATEMENT, THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT OF THE CONSTITUTION, BECAUSE THE STATEMENT WAS MADE AFTER THE ARREST AND IN RESPONSE TO INTERROGATION, AND APPELLANT WAS NEVER ADVISED OF HIS MIRANDA WARNINGS.
 2. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE OFFICER ARRESTED APPELLANT FOR A MISDEMEANOR THAT THE OFFICER DID NOT WITNESS.
 3. THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT APPELLANT WAS "OPERATING" THE VEHICLE.
The evidence at the suppression hearing, which was conducted by the trial court's magistrate, consisted of the testimony of Sgt. Rodney Myers of the Fairborn Police Department. The facts are ably summarized by the trial court in its Decision and Judgment Entry overruling Johnson's objections to the magistrate's decision and adopting the decision as the order of the trial court. We will supplement this summary where necessary to our discussion of the assignments of error.
The grounds for defendant's two objections are that there was no basis for arresting the defendant for driving under suspension since no evidence was offered that he was operating a vehicle on a public road and that there was insufficient evidence to give rise to probable cause for defendant's arrest for driving under the influence.
On September 13, 2000, at approximately 10:30 p.m. Sgt. Rod Myers of the Fairborn Police Department was dispatched to 120 Pearl, Fairborn, Ohio, on an accident report. Defendant's son, Bobby Johnson, reported that his father had driven into his front porch with a vehicle. The officer observed the vehicle parked in the front yard in the grass within close proximity to the front porch of the address and facing the porch with the headlights on. The officer observed defendant in the driver's seat of the vehicle with the brake lights on. Defendant opened the driver's side door and defendant's right hand reached to the steering column and moved into the back area of the car. Defendant then exited the vehicle. The driver's door window had been broken, defendant had glass in his lap and particles of glass on his left arm. He was bleeding around the left wrist area. Defendant's son said he saw the defendant drive the car into the front yard and into his porch.
The officer observed that defendant's movements and his balance were unsteady. Defendant reached back and put his hand on the car as if to steady himself or prevent himself from leaning in one direction or another. His movements were slow and deliberate. His speech and communication seemed confused. He would contradict himself. His perception of time was inaccurate. Defendant's eyes were watery and bloodshot; he had an extremely strong odor of an alcoholic beverage about his breath. His speech was slurred.
The officer knew, from previous contact with the defendant 45 minutes earlier, that the defendant did not have a valid driver's license. He had verified that through LEADS. Defendant was arrested on the scene for driving under suspension and he was taken into custody. Defendant was later arrested at the police station for driving under the influence.
Even though the officer never saw car keys in the hands of Mr. Johnson he did observe the brake light on and tracks leading from the street to the vehicle. He could see where the wheels rolled over the grass and in the vicinity of the yard closest to the porch he could see where the wheels spun in the turf and caused bare mud spots and kicked-up grass or pieces of broken and torn grass and sod. In the area of the rear wheels he could see where the vehicle had evidently backed up and gone forward on more than one occasion. The vehicle had obviously collided with the porch.
The Court finds that based upon Officer Myers' check of defendant's driving privileges through LEADS 45 minutes earlier he had probable cause to believe that the defendant was driving under suspension.
Further, upon his observations of the defendant's demeanor, his training and his experience and regularly dealing with alcohol-impaired individuals the officer had probable cause to arrest the defendant for driving under the influence.
We agree with the State that Johnson has waived all but plain error review as a result of his failure to assert a Miranda violation in his objections to the magistrate's decision. See Traffic Rule 14(C), which incorporates the objection procedure of Civ.R. 53(E)(3)(4); Thomas v. Thomas (Oct. 9, 1998), Greene App. No. 98 CA 59, unreported.
No error, much less plain error, is demonstrated by this record. The un-Mirandized statements that Johnson sought to suppress are found in the following passage:
 Q. Prior to that time, do you recall the Defendant making any specific statements about his level of intoxication or his driving ability?
 A. I remember him making statements about his driving.
Q. Before Mirandizing him?
A. Yes.
Q. What, specifically, and when?
 A. Just asked him, you know, What's going on? And, you know, as I indicated earlier, he indicated, I was just sitting here in my car. I remember asking, How did you get where you're at now? And he says, What do you mean? I says, Well, I talked to you a little while ago at your house, and now you're here. This car that you're in was at your house earlier when I was there. And he said, No, it wasn't. I said, Well, what do you mean? He said, I've been sitting here for two hours in my car. And I said, Well, how did you get here? And he said that he walked up to that address and sat in the seat and was getting ready to take the car home.
 Q. And was he out of the vehicle when you had that conversation?
A. Yes, he was.
 Q. How long had he been out of the vehicle when you had that conversation with the Defendant?
A. Within five minutes of him exiting the car.
 Q. Had you placed him in custody at that point, if you recall?
A. At that point, no.
We agree with the State that this exchange between Sgt. Myers and Johnson was not custodial interrogation which required Myers to administer the Miranda warnings. Sgt. Myers' questions took place before he formally arrested Johnson and were in keeping with investigation of the situation confronting him. While Johnson may not have been free to go, the fact that he was being detained does not necessarily mean that he was in custody. See State v. Campbell (Aug. 9, 1995), Clark App. No. 94 CA 78, unreported. Johnson attempts to avoid the investigative detention/custody distinction by arguing that Sgt. Myers — knowing that Johnson's driving privileges had been suspended — had a legal basis for arresting Johnson as soon as he observed him in the driver's seat of the car. Thus, Johnson appears to conclude, grounds for arrest equate with actual arrest. We disagree. In the absence of a formal arrest, "(t)he relevant inquiry is what a reasonable person in (Johnson's) shoes would have understood his situation to be." See State v. Fundeberg (Dec. 4, 1998), Clark App. No. 98 CA 6, unreported, citing Berkemer v. McCarty (1984), 468 U.S. 420 and Stansbury v. California (1994), 511 U.S. 318. Nothing of record supports the proposition that a reasonable person in Johnson's position — or Johnson himself for that matter — would have thought he was in custody when the above-quoted exchange took place.
The first assignment is overruled.
Johnson objected to the magistrate's conclusion that Sgt. Myers had probable cause to arrest him for driving under suspension because "no evidence was offered that (Johnson) was operating a vehicle on a public road." On appeal, Johnson contends that Sgt. Myers did not view this offense, and that the arrest in this case did not satisfy any exceptions to the rule that warrantless arrests for misdemeanors are only permitted for misdemeanors committed in the arresting officer's view. See R.C.2935.03(A)(1); State v. Lewis (1893), 50 O.S. 179.
Although the State does not directly address Johnson's second assignment of error, we believe its reliance on Oregon v. Szakovits (1972), 32 Ohio St.2d 271 is sound. Szakovits involved two distinct DUI cases occurring in two different municipalities. The court concluded that although the officer in each case did not observe the violation, each arrest was proper because based on the officer's observations — defendant's admission that he was driving and indicia of intoxication — the arresting officer could reasonably conclude that the car was driven by the defendant shortly before the officer's arrival, and that defendant was intoxicated. Put differently, the officers "properly found each to have been violating an ordinance of the respective municipal corporations prohibiting (DUI)" within the meaning of R.C. 2935.03. Id. at 273-4. The circumstances here are similar. Sgt. Myers knew as of the time he arrived at 120 Pearl Street that Johnson's driving privileges had been suspended. Forty-five minutes earlier, Sgt. Myers had been at Johnson's residence at 711 South Maple where he observed the same car that Johnson occupied when he observed him on Pearl Street. Johnson's son had told Sgt. Myers that Johnson had driven the car into his yard and into his porch. There were tire tracks attributed to Johnson's car across the grass from the street to the porch. While it is true that Sgt. Myers did not see Johnson driving on the public street, the circumstances permitted no other reasonable inference than that he had done so. Knowing that Johnson's driving privileges had been suspended, Sgt. Myers had probable cause to arrest Johnson for driving under suspension.
The second assignment is overruled.
As under the second assignment, Johnson argues here that Sgt. Myers lacked probable cause to arrest him for DUI because Sgt. Myers did not see him operate the car he was seated in.
The short response to this assignment is that Johnson was arrested for DUS, not DUI, and was only later charged with DUI after field sobriety tests were conducted at the police department. Nevertheless, we believe the evidence established probable cause to believe Johnson had been operating the car. Again, the facts fit comfortably within the holding of Szakovits. Sgt. Myers observed Johnson's car at his own residence less than forty-five (45) minutes earlier. As Sgt. Myers approached the same car later on Pearl Street, he saw Johnson in the driver's seat. The brake lights indicated that Johnson's foot was on the brake. The headlights were on. Johnson appeared to remove the keys and place them in the back of the car when Sgt. Myers approached. Car tracks showed the car had been driven from the street, across the grass, and into the porch. There were signs of the damage to the porch and to the car from the collision. Johnson's own son told Sgt. Myers that he heard the car and went outside and saw Johnson driving his car into the porch.
The third assignment is overruled.
The judgment will be affirmed.
BROGAN, J. and FAIN, J., concur.