OPINION
{¶ 1} Appellant, Gregory A. Chudzik, appeals from the December 16, 2002 judgment entry of the Ashtabula County Court of Common Pleas, Eastern Division, in which he was sentenced for driving under the influence of alcohol ("DUI") and failure to control his motor vehicle.
 {¶ 2} On August 15, 2002, a complaint was filed against appellant, charging him with DUI, in violation of R.C.4511.19(A)(1) and (3), misdemeanors of the first degree, and failure to control, in violation of R.C. 4511.202, a minor misdemeanor, in which appellant entered a not guilty plea at his initial appearance.
 {¶ 3} On August 26, 2002, appellant filed a motion to suppress, and appellee, the state of Ohio, filed its response on October 4, 2002. A suppression hearing was held on October 29, 2002. Pursuant to its November 15, 2002 judgment entry, the trial court overruled appellant's motion. On December 16, 2002, appellant withdrew his former not guilty plea, and pleaded no contest.
 {¶ 4} The facts revealed at the suppression hearing are as follows: on August 15, 2002, at 12:30 a.m., Trooper Rick Caraway ("Trooper Caraway"), a trooper with the Ohio State Highway Patrol, Ashtabula Post, was dispatched to the scene of an accident on Windsor Road in Colbrook Township, Ashtabula County, Ohio. According to Trooper Caraway, Deputy DeFazio, a deputy with the Ashtabula County Sheriff's Office, was already at the scene when he arrived. At that time, Trooper Caraway noticed a damaged vehicle off the south side of the roadway. Trooper Caraway testified that he spoke with Deputy DeFazio, who advised him that appellant, the driver of the car, was sitting inside the vehicle. Trooper Caraway also stated that Deputy DeFazio had already spoken to appellant and instructed him to remain in the car until a state trooper arrived. Trooper Caraway further said that Deputy DeFazio told him that he observed a bong, which is an apparatus commonly used to smoke marijuana, in the rear seat when he first arrived.
 {¶ 5} After Trooper Caraway and Deputy DeFazio approached appellant's vehicle, Trooper Caraway asked appellant for his driver's license, vehicle registration, and proof of insurance. Trooper Caraway testified that "[t]here was the odor of an alcoholic beverage emanating from [appellant's] vehicle." After Deputy DeFazio asked appellant where the bong was, Trooper Caraway observed it outside of the vehicle on the ground by the passenger's side door. Trooper Caraway stated that appellant's speech was "slurred" and his eyes were "red and glassy."
 {¶ 6} Appellant then exited his vehicle and Trooper Caraway instructed him to go to the patrol car to begin the crash investigation. According to Trooper Caraway, appellant said that he was driving the vehicle when it crashed. Trooper Caraway asked appellant how much alcohol he had to drink prior to the crash, and appellant stated that he had nothing. Appellant later admitted in a subsequent written statement, after he was arrested, that he had a little bit to drink.
 {¶ 7} Trooper Caraway testified that appellant agreed to perform three field sobriety tests, which included the horizontal gaze nystagmus, the walk-and-turn, and the one-leg stand Based on Trooper Caraway's observations of appellant's eyes, as well as his coordination and balance, he placed appellant in the patrol car again and told appellant that there was enough evidence of impairment to take him in for a test at the Orwell Police Department ("OPD"). Trooper Caraway stated that appellant insisted that he did not have that much to drink and agreed to take a portable breath test. Appellant tested a .157 on the portable breath test, over the presumptive level of .100.
 {¶ 8} According to Trooper Caraway, he believed that appellant was under the influence of alcohol at that time based on the totality of the circumstances. Trooper Caraway testified that he placed appellant under arrest and advised him of his constitutional rights. Trooper Caraway then stated that he transported appellant to the OPD for a breath test, and appellant's blood alcohol content was .133. However, the test was administered outside the two-hour limit.
 {¶ 9} Appellant testified that when Trooper Caraway arrived at the scene and spoke with him, he did not feel free to leave and was not given notification of his constitutional rights at that time. Appellant stated that he was the driver of the vehicle, which he crashed on August 15, 2002. Also, appellant said that he had about twenty some ounces of beer after the crash. Appellant further testified that he did not understand Trooper Caraway's question when he provided in his oral statement that he had nothing to drink because he is deaf in his left ear.
 {¶ 10} Pursuant to the December 16, 2002 judgment entry, the trial court concluded that appellant was guilty of the R.C.4511.19(A)(1) DUI charge as well as the failure to control charge. The trial court sentenced appellant to ninety days in jail, eighty days suspended, as well as suspended appellant's driver's license for one year, fined him $500 for the DUI charge and $50 for the failure to control charge, which totaled $550, and placed him on unsupervised probation for one year. The R.C.4511.19(A)(3) DUI charge was dismissed. The trial court stayed appellant's sentence pending appeal. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 11} "The statements taken from [appellant] after his stop were the result of an unreasonable seizure in that [appellant] was in custody at the time the statements were taken and the custodial officer had, by his own admission, failed to advise [appellant] of his [Miranda] rights prior to the taking of the statements."
 {¶ 12} In his sole assignment of error, appellant argues that the statements taken from him after his stop were the result of an unreasonable seizure because he was in custody, and, thus, must be suppressed. Appellant alleges that Trooper Caraway, by his own admission, failed to advise him of his Miranda rights prior to taking his statements. Appellant stresses that he did not feel free to leave the scene from the beginning when he was ordered by Deputy DeFazio to get in his crashed vehicle, as well as later when he was interrogated by Trooper Caraway in his cruiser.
 {¶ 13} This court stated in State v. Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, at ¶ 16, that:
 {¶ 14} "[a]t a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366 * * *. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594 * * *. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96
* * *." (Parallel citations omitted.)
 {¶ 15} If a suspect is in custody, police officers are required to advise the suspect of his Miranda rights prior to questioning him. Miranda v. Arizona (1966), 384 U.S. 436,478-479. In order to determine whether one is in custody, courts must focus on how a reasonable person in the detainee's position would have felt if he or she were in the same position. State v.Gaston (1996), 110 Ohio App.3d 835, 842, citing Berkemer v.McCarty (1984), 468 U.S. 420, 426. An individual subject to on-scene investigative questioning, pursuant to a detention involving a traffic matter, is not "in custody" for the purposes of Miranda. Berkemer, supra, at 440. See, also, State v.Shantery (Dec. 16, 1994), 11th Dist. Nos. 93-L-192 and 94-L-050, 1994 Ohio App. LEXIS 5700; State v. Goodenough (June 21, 1996), 11th Dist. No. 95-L-202, 1996 Ohio App. LEXIS 2580.
 {¶ 16} In the case at bar, according to its November 15, 2002 judgment entry, the trial court stated that: "[t]he admission by [appellant] that he was driving the vehicle was made while [appellant] was temporarily detained pursuant to the investigatory stop and that [appellant] was not in custody for the purpose of [Miranda] * * *." The trial court further determined that "the BAC test was not administered within two hours of the offense, but is still admissible when presented with expert testimony * * *." We agree.
 {¶ 17} The evidence presented shows that there was no traffic stop, but rather, Trooper Caraway was dispatched to a traffic crash. As previously mentioned, Trooper Caraway testified that Deputy DeFazio was already at the scene when he arrived. Trooper Caraway said that Deputy DeFazio told him that he observed a bong inside of appellant's car when he first arrived. According to Trooper Caraway, appellant was sitting in the driver's seat and an odor of alcohol emanated from his car. After Deputy DeFazio asked appellant where the bong was, Trooper Caraway observed it, in plain view, outside of appellant's vehicle. Trooper Caraway stated that appellant's speech was "slurred" and his eyes were "red and glassy." Trooper Caraway testified that he then instructed appellant to go to the patrol car to begin the crash investigation, at which time appellant admitted that he was driving the vehicle when it crashed. In this sense, appellant's admission was made while he was subjected to on-scene investigative questioning. Thus, pursuant to Berkemer, supra, appellant was not in custody at that time for purposes ofMiranda. Based on Gaston and Berkemer, supra, we believe that a reasonable person in appellant's position would not have felt that he or she was in custody when appellant was first told by Deputy DeFazio to remain in his vehicle until a state trooper arrived, or later when Trooper Caraway began the crash investigation. Appellant's subjective belief that he did not feel free to leave is not controlling in determining whether he was in custody for purposes of Miranda. See State v. Springer
(1999), 135 Ohio App.3d 767.
 {¶ 18} Although appellant denied drinking any alcohol prior to the crash, he later admitted in a subsequent written statement that he had a little bit to drink. Due to appellant's impaired condition after performing three field sobriety tests as well as testing a .157 on the portable breath test, Trooper Caraway testified that he placed appellant under arrest and advised him of his constitutional rights. Even though appellant's breath test at the OPD, which revealed a blood alcohol content of .133, was administered outside the two-hour limit, it would have been competent evidence if presented in conjunction with Trooper Caraway's testimony regarding appellant's impaired condition if the matter went to trial. See State v. Thompson (July 27, 2001), 11th Dist. No. 2000-T-0096, 2001 Ohio App. LEXIS 3356.
 {¶ 19} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Ashtabula County Court of Common Pleas, Eastern Division, is affirmed.
Grendell, J., Rice, J., concur.