**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0602n.06
Filed: October 6, 2008

**No. 07-5880**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| LARRY BOYETT, JR., | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     GUY, BATCHELDER, McKEAGUE, Circuit Judges

**McKEAGUE, Circuit Judge**.        Larry Boyett, Jr., appeals the district court's denial of his motion to suppress the firearm found in his car on May 31, 2006.  After the district court denied his motion, Boyett entered a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).   Finding no error in the district court's decision, we affirm.

**I**.

The chain of events that led to Boyett's arrest began on May 29, 2006.  Police responded to a report of aggravated armed robbery called in by Ashley Jones and Charles Brown.  Jones and Brown reported that a man they knew by the name of "Juvenile," whose first name was probably Larry, had robbed them at gunpoint in Freeman Park.  Jones and Brown said they had been in a

verbal altercation with the man they knew as Juvenile earlier in the evening, but that Jones and Brown had later decided to say good-bye to Juvenile before Brown left town.

Jones and Brown said they made plans to meet Juvenile at Freeman Park on the evening of May 29, 2006. Jones and Brown waited in Jones's car. They further related that, when the man they knew as Juvenile arrived, he approached the car, pulled a gun, and demanded their money. According to Jones and Brown, he took the keys and their cell phone, throwing Jones's keys away from the car. He then left in a vehicle they described as a silver and maroon Ford Bronco II 4x4.

Jones and Brown went to a nearby Exxon station and called the police. Officer Carey Faulkner arrived and took the report. She had some questions about their reasons for originally coming to the park, but found their report of the crime to be credible. Jones and Brown described their assailant as a twenty-five year old white male from Benton County with a previous criminal history, and they also provided a description of the Bronco. Officer Faulkner noted that both victims appeared "very shaken." She also noted that there were palm prints on the passenger side door of Jones's car, consistent with their story. However, she saw their cell phone in the back seat of the car, which was inconsistent with their story.[1] Jones and Brown also described the gun differently, with Jones saying it was black and Brown saying it was silver. Officer Faulkner filed a report of the robbery noting the description of the assailant and his car.

On May 31, 2006, Lieutenant Joseph Massey reviewed Officer Faulkner's report before beginning his shift. While on patrol, he saw a vehicle matching the description in the report "to a

---

[1]Jones and Brown explained that the cell phone had been dropped when it was handed to the assailant.

T." Lieutenant Massey also recognized the driver as Larry Boyett, a man he had investigated previously in a road rage accident in Bartlett, Tennessee. That incident had involved a car that flipped and took out a light pole. Lieutenant Massey found a .38 revolver in Boyett's car when investigating that incident. He also found that Boyett had an aggravated burglary conviction and other pending felony charges.

After recognizing the vehicle, Lieutenant Massey made a U-turn to follow Boyett's Bronco. He also requested assistance from other officers. After a short time, Boyett turned quickly into a parking lot. Lieutenant Massey turned on the blue lights on his unmarked car and initiated what Lieutenant Massey termed "a high-risk stop." Lieutenant Massey pulled his gun and demanded Boyett and his passenger immediately exit their vehicle. He had them kneel on the ground with their hands behind their heads and kept them at gunpoint until assistance arrived.

Less than a minute later, other officers arrived. Lieutenant Massey and the other officers handcuffed the two subjects, frisked them, and placed them in the backseats of two different squad cars. Officers then searched the Bronco to ensure there were no weapons present. They searched "any area that could potentially hold a weapon" and found a .38 caliber gun with five live rounds in the central console. The officer who found the gun reported that the central console "had been tampered with frequently" and "was very loose." When he pulled up on it, he found the gun. Boyett was arrested and later indicted for being a felon in possession of a firearm.

Prior to trial, Boyett moved to suppress the gun because the initial report of the robbery was not reliable. The district court found that the report "was tendered to the investigative division" and so provided a basis for the stop. The district court also held that the stop was not an arrest and that

the scope of the search was reasonable under the circumstances. The court therefore denied the motion to suppress. Boyett pleaded guilty to being a felon in possession and was sentenced to a prison term of 188 months.

## II.

Boyett raises two issues on appeal. He argues that the report did not provide reasonable suspicion for a stop because the report was so outlandish. He then argues that his treatment during the stop elevated the stop to an arrest and that the arrest was not supported by probable cause. Neither of these arguments have merit.

### A. Standard of Review

We review a district court's legal conclusions de novo and its factual findings for clear error. *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). In de novo review of the justification for a *Terry* stop, the district court's decision receives "due weight" because the district court "is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination." *Id.* (quoting *United States v. Graham*, 483 F.3d 431, 435 (6th Cir.2007).

### B. Justification for the Stop and the Search

First, the officers had reasonable suspicion to stop Boyett. In assessing reasonable suspicion, we look to the "totality of circumstances . . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004). "If police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a

*Terry* stop may be made to investigate that suspicion." *United States v. Hensley*, 469 U.S. 221, 229 (1985). The circumstances can include information "derived from such sources as informant tips, dispatch information, and directions from other officers." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008). The report itself must have "been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense." *Hensley*, 469 U.S. at 232.

Despite the unusual nature of the reported robbery in the park, it led directly to a police report whose characteristics provided a basis for a *Terry* stop. A report should create reasonable suspicion when "the victim of a street crime seeks immediate police aid and gives a description of his assailant." *See Adams v. Williams*, 407 U.S. 143, 147 (1972). The victims "came forward personally to give information that was immediately verifiable at the scene," and a false report is punishable under state law. *See id.* at 146-47. The officer on the scene found palm prints on the car consistent with their story.[2] The report contained a detailed description of the car involved, as well as a description of the assailant, part of his name, and the weapon he used. The reporting officer thus had a particularized basis for a reasonable suspicion sufficient to justify a *Terry* stop of someone matching the description given by Jones and Brown.

Lieutenant Massey read the resulting report and, on May 31, he saw a silver and maroon Bronco 4x4, which matched the vehicle described in the report, on the highway. He recognized the driver as Larry Boyett, and remembered that the report indicated the suspect's first name may be

---

[2]Jones and Brown did give different descriptions of the gun used in the robbery. However, Officer Faulkner testified that it was "very common" for victims of violent crimes to give inconsistent descriptions of the weapon used. (J.A. at 59.)

Larry.  The Bronco also had a Benton County sticker on its license plate, and the report stated that the suspect may be from Benton County.  Additionally, Lieutenant Massey knew Boyett had previously been charged with aggravated burglary and had kept a .38 in his car–the same type of weapon listed in the report.  These circumstances, paired with the report, generated a particularized and objective basis for reasonable suspicion sufficient to justify the stop.

The scope of the search incident to the stop was also justified.  An officer making a *Terry* stop may take "preventive measures to ensure that there were no other weapons within [the subject's] immediate grasp before permitting him to reenter his automobile."  *Michigan v. Long*, 463 U.S. 1032, (1983).  This includes a "search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden."  *Id.* at 1049; *see also United States v. Graham*, 483 F.3d 431, 439-440 (6th Cir. 2007).  The search may include closed compartments in the car.  *Long*, 463 U.S. at 1049 (finding it reasonable to search a glove compartment for a weapon during a *Terry* stop); *see also United States v. Shank*, __ F.3d __, 07-3544, 2008 WL 4273129, at *4 (6th Cir. Sept. 19, 2008).

Here, the officers searched the car prior to allowing Boyett and his passenger to reenter the car.  The search included the central console, which looked as if "it had been tampered with frequently."  The officers found that by "just basically pulling up on the top of [the console] there was a revolver located underneath the cover."  Since Boyett would have had access to this weapon upon returning to his vehicle, the search of the console was permissible under *Michigan v. Long*.

**C.  The Stop Did Not Become an Arrest**

Boyett also argues that his treatment during the stop converted the stop into a full arrest, which was impermissible as the officers lacked probable cause.

In order to determine if the stop became an arrest, we must determine whether "the detention and investigative methods used were 'reasonable under the circumstances.'" *United States v. Heath*, 259 F.3d 522, 529 (6th Cir. 2001) (quoting *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990)). Any force used must be "reasonably related in scope to the situation at hand." *Id.* at 530. Holding subjects at gunpoint, handcuffing them, and placing them in a squad car does not turn a *Terry* stop into an arrest where the police officers "reasonably fear that suspects are armed and dangerous." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th cir. 1999). In *Heath*, officers who suspected a weapon may have been involved in the crime were permitted to approach the car at gunpoint, forcibly pull the defendant from the car, and handcuff him. *Id.* at 526, 530. Placing a subject in a squad car can be justified in order to secure the scene, particularly when the police do not question the subject while in the squad car. *See United States v. Jacob*, 377 F.3d 573, 580 (6th Cir. 2004). Placing a defendant in a squad car is also justified during a search for a weapon. *United States v. Caruthers*, 458 F.3d 459, 469 (6th Cir. 2006).

Boyett was stopped under suspicion for aggravated burglary, and Officer Massey had personal knowledge of Boyett previously possessing a weapon in a vehicle. The charge thus involved a weapon, and Officer Massey had additional information that solidified the objective basis for suspecting Boyett may have a weapon in his car. The officers did not question the suspects while they were in the squad car, and only a few minutes passed between when the stop

was initiated and when the officers discovered the firearm in the car.  Approaching the car at gunpoint, handcuffing Boyett and his passenger, and then placing them in squad cars during the search was reasonably related to the situation at hand.  Therefore, the stop did not ripen into an arrest, so there is no need to examine whether the officers had probable cause to arrest Boyett.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.