The STATE of Ohio

v.

TANNER.

2010-Ohio-5231.]

Athens County Municipal Court, Ohio.

No. 10TRC03094.

Decided Aug. 11, 2010.

Patrick J. Lang, Athens City Law Director, and Lisa A. Eliason, Athens City Prosecuting Attorney, for the state.

Douglas J. Francis, for defendant.

---

GRIM, Judge.

{¶ 1} This matter came on for evidentiary hearing today, August 3, 2010, upon defendant's motion to suppress. Defendant, Albert Tanner, was present, represented by his attorney, Douglas J. Francis; the state of Ohio was represented by Lisa A. Eliason, Athens Chief City Prosecutor. Upon consideration of testimony and arguments, the court finds as follows:

## FACTS

1. On the evening of May 22, 2010, Captain Lucas Mace received a telephone call at the Glouster Police Department. The caller did not identify himself but reported that a car had run off Congress Run Road into a yard and that the driver was attempting to leave the scene.

2. Congress Run Road is Athens County Road 32 and skirts the eastern corporation limits of the village of Glouster. The road itself is outside the village, but the Glouster police department is the closest law-enforcement agency.

3. Captain Mace radioed the county dispatcher to notify the Ohio Highway Patrol. The dispatcher requested that Mace secure the scene until the Highway Patrol trooper arrived.

4. In addition to his Glouster commission, Mace holds an auxiliary commission with the Athens County Sheriff's Office. This authorizes him to act in the county under the direction of the regular deputies. Glouster and the Athens County Sheriff's Office have a mutual-aid agreement, which authorizes action by the other when requested by the agency having primary territorial jurisdiction.

5. Mace arrived at the scene and observed defendant in the driver's seat of a vehicle approximately 100 yards from the roadway. He could see ruts in the

meadow leading from the roadway to the car. Defendant was attempting to drive the car out of the meadow but could not gain any traction.

6. As Mace approached the vehicle, defendant exited it and attempted to hide behind a tree. Mace ordered defendant to come out and then handcuffed him and placed him in the back seat of the Glouster police cruiser. Mace's reason for doing so was his belief that defendant would flee before the trooper arrived to investigate. Mace testified that he did not arrest defendant at that time but instead was detaining him for investigation of whether he had been operating a motor vehicle while under the influence ("OVI").

7. Upon initial contact with defendant, Mace noted that defendant emitted a strong odor of alcohol, had slurred speech, and was slow to respond to directions. From those observations and the accident scene, Mace believed that defendant was under the influence of alcohol.

8. Trooper Steven Daugherty arrived at the scene about 20 minutes later. He removed defendant from the Glouster cruiser and removed the handcuffs from defendant. Daugherty noted that defendant emitted a strong odor of alcohol and that his speech was slurred.

9. After advising defendant of his *Miranda* rights, Daugherty asked about his consumption of alcohol, and defendant replied that he had consumed six 16–ounce beers that day. Defendant admitted that he had been driving the vehicle when it went off the road, explaining that his dog had bumped the steering wheel. Daugherty did verify that there was a dog in defendant's vehicle.

10. Daugherty conducted a horizontal gaze nystagmus ("HGN") test of defendant in substantial compliance with National Highway Traffic Safety Administration ("NHTSA") guidelines, of which the court takes judicial notice. Defendant scored six of six possible clues of intoxication. The test was given with Daugherty facing the cruiser's strobe lights.

11. After ten minutes of observation, Daugherty gave defendant a portable breath test on an Alco–Sensor II device. Such device has previously been found by this court to be a reliable estimator of breath-alcohol content. The result of this first breath test was .175.

12. Daugherty gave defendant a second breath test after waiting another five minutes. He did not change the mouthpiece. The result of the second breath test was .170.

13. Daugherty did not offer defendant the one-leg-stand test or the walk-and-turn test, as he was concerned, based on information from Mace, that defendant might flee.

14. Defendant was arrested for OVI, properly advised of the consequences, and tested .134 on the BAC Datamaster.

## ISSUES

{¶ 2} Defendant has submitted six issues for the court's consideration:

A.  Mace had no authority to approach defendant outside Glouster village limits.

B.  Mace had no authority to detain defendant, because he did not view any misdemeanor violation.

C.  Mace had no authority to detain defendant, because he was outside his territorial jurisdiction.

D.  Mace had no authority to detain defendant for 20 minutes awaiting the arrival of the trooper.

E.  The HGN test is invalid due to the strobe lights.

F.  The portable-breath-test results are invalid due to minimal observation time and absence of a new mouthpiece for the second test.

## CONCLUSIONS

A.  Mace's initial contact with defendant was a community caretaking function.  As the closest law-enforcement officer, he was dispatched to check for injuries and secure the scene.  His purpose was not to arrest or to gather evidence but rather to maintain the status quo until an investigating officer could arrive.  See Katz, Ohio Arrest, Search and Seizure (2010), Section 17:3, and cases cited therein.

B.  R.C. 2935.03 authorizes warrantless arrests for misdemeanors observed by the arresting officer.  *State v. Lewis* (1893), 50 Ohio St. 179, 33 N.E. 405. Although Mace did not see defendant operating a vehicle on a roadway, he did observe him operating a vehicle.  R.C. 4511.19(A) prohibits operation of a vehicle under the influence anywhere in the state of Ohio, not just upon public highways.  Furthermore, even if an officer arrives on an accident scene after the driver has left the vehicle, an admission by that person that he was driving can satisfy this requirement.  *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742.

C.  From the totality of the circumstances, it does not appear that Mace was acting under his auxiliary commission as a deputy sheriff or as part of a mutual-aid agreement.  Therefore, for purposes of discussion on this point, the court assumes that all his interaction with defendant was done outside Mace's territorial jurisdiction.

This issue has been decided by three Ohio Supreme Court cases and one United States Supreme Court case: *Kettering v. Hollen* (1980) 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598; *State v. Weideman* (2002), 94 Ohio St.3d 501, 764 N.E.2d 997; *State v. Jones,* 121 Ohio St.3d 103, 2009-Ohio-316, 902

N.E.2d 464; *Virginia v. Moore* (2008), 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559. So long as the detention or arrest meets constitutional standards of reasonableness or probable cause, suppression of evidence is not appropriate.

D. Defendant also asserts that he was under arrest when he spent 20 minutes handcuffed in the Glouster police cruiser and that there was no probable cause at that time for an OVI arrest. Mace testified that this was an investigative detention rather than an arrest. This presents several subissues: Was this an arrest? If it was an arrest, was it supported by probable cause? If it was an investigative detention, was it supported by reasonable articulable suspicion? Is it reasonable to have an investigative detention without an investigation during the detention?

1. An arrest requires four elements: Intent to arrest, under a real or pretended authority, accompanied by a real or constructive seizure or detention, which is understood as a detention by the person in custody. *State v. Darrah* (1980), 64 Ohio St.2d 22, 18 O.O.3d 193, 412 N.E.2d 1328. The United States Supreme Court has defined arrest in similar terms as "an assertion of authority and purpose to arrest followed by submission of the arrestee." *California v. Hodari D.* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690. Both the above definitions require an intent to arrest, and Mace did not have the intent to arrest when he took defendant into custody. A profession of no intent to arrest is not always dispositive. In *Dunaway v. New York* (1979), 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824, the Supreme Court found that handcuffing a defendant, placing him in a patrol car, transporting him to the police station, and placing him in an interrogation room was an arrest requiring probable cause. Other cases discussed in Katz, Ohio Arrest Search and Seizure, at Section 3:2, differ as to what lesser restraints cross the line from investigative detention to arrest.

From the totality of the circumstances in this case, the court finds that defendant's detention in the patrol car was not an arrest. Mace genuinely intended to do no more than maintain the status quo until an investigating officer could arrive. If defendant had been transported to a holding cell, the court would reach a different conclusion under *Dunaway*.

2. Accepting that this was an investigative detention, the court next examines the facts allegedly establishing reasonable suspicion. Given that the defendant had driven off the road, emitted a strong odor of alcohol, slurred his speech, and made slowed responses, the court finds that Mace had reasonable suspicion of an OVI violation.

An investigative detention is limited to the time it reasonably takes to determine facts that will either confirm or dispel the suspicion, with the reasonableness of the detention to be decided on a case-by-case basis, *Terry*

*v. Ohio* (1968), 392 U.S. 1[, 88 S.Ct. 1868, 20 L.Ed.2d 889]. This rule anticipates that the detaining officer will progress in his inquiry. In *United States v. Sharpe* (1985) 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605, the Supreme Court found a 20–minute detention to be reasonable.

In this case, the court finds that the officers acted as promptly as possible. Mace requested that a highway patrol trooper be dispatched as soon as he was told of the location, and Daugherty arrived as soon as possible, given the necessary transit time from Athens. There was no unnecessary delay. E. The HGN test meets the minimum requirements for admissibility because it substantially complied with NHTSA guidelines, which do not mention strobe lights as a concern. The court, as the trier of fact in this motion hearing, has concerns about reliability with strobe lights. However, the standard for suppression is noncompliance with NHTSA guidelines rather than lack of reliability as determined by the court. *State v. Luke*, Franklin App. No. 05AP–371, 2006-Ohio-2306, 2006 WL 1280899.

Therefore, the court will allow the HGN test results into evidence for the jury to determine the weight to give the evidence. For purposes of this hearing, the court gives little weight to these results.
F. Instructions for the Alco–Sensor II portable breath-testing device, of which the court takes judicial notice, require that the officer determine that the subject has not ingested alcohol for at least 15 minutes. This can be accomplished by observation or inquiry. Although Daugherty personally observed defendant for only ten minutes prior to the first portable breath test, he was aware that defendant had been handcuffed in the Glouster police cruiser for 20 minutes prior to his arrival. The court finds this combined 30–minute period sufficient for any alcohol in defendant's mouth to dissipate.

A second portable breath test is not required by the device instructions or by Ohio Highway Patrol protocol. Its use is discretionary to corroborate the validity of the first test. The court is concerned about the lack of a clean mouthpiece for the second test, as any remaining saliva from the first test could elevate the second reading. However, the drop from .175 on the first test to .170 on the second test is very consistent with being true readings.

## DECISION

{¶ 3} From the totality of the circumstances, the court holds that defendant's detention was reasonable and his arrest was supported by probable cause. Defendant's motion to suppress is denied. The administrative license suspension remains in effect.

So ordered.