[Cite as *State v. Everett*, 2019-Ohio-2397.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-142** |
| SCOTT W. EVERETT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Mentor Municipal Court, Case No. 2018 TRC 02711 AB.

Judgment: Affirmed.

*Lisa M. Klammer*, City of Mentor Prosecutor, 8500 Civic Center Boulevard, Mentor, OH 44060 (For Plaintiff-Appellee).

*Gregory A. Gentile*, Gentile Law, LLC, 600 East Granger Road, Second Floor, Cleveland, OH 44131 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Scott W. Everett ("Mr. Everett"), appeals from the judgment of the Mentor Municipal Court convicting him of OVI and failure to control following his no contest plea. He argues the trial court erred in denying his motion to suppress evidence obtained following (1) his unlawful arrest without probable cause, and (2) his placement in custody without *Miranda* warnings.

{¶2} We find that (1) under the totality of the circumstances, the officers' actions in this case did not exceed the bounds of a lawful investigative detention, (2) Officer

Jacob's questioning of Mr. Everett and the administration of field sobriety tests did not constitute custodial interrogation, and (3) Mr. Everett's statements and the results of his field sobriety tests did not constitute self-incriminating statements.

{¶3} For the reasons that follow, we affirm the judgment of the Mentor Municipal Court.

## Substantive and Procedural History

{¶4} On August 10, 2018, at approximately 10:19 p.m., Mentor Police Officer Matthew Jacob ("Officer Jacob") received a call from dispatch indicating that a vehicle had crashed into a building on Station Street in Mentor, Ohio. Other officers were also en route based on the seriousness of the dispatch report. Upon arrival at the scene, a witness pointed Officer Jacob in the direction of the crashed vehicle.

{¶5} Officer Jacob observed a Chevy Impala pinned up against a tree and the building at Lintern Corp. The business was closed for the evening, so there was no legitimate reason for a vehicle to be present in the area. Based on his observations of tire tracks and damage to landscaping, Officer Jacob concluded the vehicle had pulled into the driveway of Lintern Corp., veered off to the left side of the driveway, crossed over some grass and bushes, and became pinned. The vehicle sustained damage to its front.

{¶6} When Officer Jacob approached the vehicle in his cruiser, he heard the vehicle's engine revving. He exited his police cruiser, stood near the passenger side door of the vehicle, and ordered the driver and sole occupant, Mr. Everett, to turn off the engine and exit. After Mr. Everett exited the vehicle, Officer Jacob ordered him to put his hands up, come toward Officer Jacob, face his vehicle, place his hands behind his back, and

2

interlace his fingers. Officer Jacob testified that this entire interaction lasted approximately 30 seconds.

{¶7} Although Mr. Everett complied with Officer Jacob's directives, Officer Jacob had to repeat himself three times before Mr. Everett complied with his orders to exit the vehicle, to come toward Officer Jacob, and interlace his fingers. According to Officer Jacob, Mr. Everett had a "blank stare" and "confused look" on his face during the encounter.

{¶8} Following this interaction, Officer Jacob handcuffed Mr. Everett. Based on Mr. Everett's previous revving of the engine, Officer Jacob was concerned Mr. Everett was going to flee. Officer Jacob did not tell Mr. Everett that he was under arrest, and he testified that he did not consider Mr. Everett to be under arrest at that time.

{¶9} Patrolman Louzias was present when Officer Jacob handcuffed Mr. Everett. Eventually, there were at least five other police officers on the scene, although it is not clear from the record when they all arrived.

{¶10} Officer Jacob instructed Patrolman Louzias to take Mr. Everett to Officer Jacob's car and "search him." Mr. Everett was placed in the back seat of a police cruiser where officers patted him down, searched his front pockets, and searched his belt/waist area. It is not clear from the record who placed Mr. Everett in the back seat of the police cruiser or who conducted the search. The officers did not find anything in Mr. Everett's pockets.

{¶11} While Mr. Everett was being placed in the back of the police cruiser and searched, Officer Jacob secured the scene by ensuring the vehicle was turned off and in

3

park and by confirming there was no structural damage to the building. Officer Jacob obtained and ran Mr. Everett's license plate number.

{¶12} Approximately two minutes after Mr. Everett was placed in the back of the police cruiser, Officer Jacob approached him and asked several questions, including if he was all right, if he had any injuries, his name, where he was coming from, whether he had anything to drink, and whether he had used any drugs. Observing a bloody scrape on Mr. Everett's knee, Officer Jacob asked him whether he wanted an ambulance, which Mr. Everett declined.

{¶13} During this questioning, Officer Jacob noticed a strong odor of alcohol on Mr. Everett's breath and observed that Mr. Everett had bloodshot, glassy eyes and slurred speech. Based on these observations, Officer Jacob asked Mr. Everett if he was willing to perform field sobriety tests. Officer Jacob told Mr. Everett that if he did not want to do the field tests, he would "just leave the cuffs on."

{¶14} After Mr. Everett performed and failed the field sobriety tests, Officer Jacob advised him he was under arrest, handcuffed him again, and read him his *Miranda* warnings.

{¶15} Mr. Everett was cited for operating a vehicle under the influence of alcohol or drugs pursuant to R.C. 4511.19(A) ("OVI") and operation without being in reasonable control of vehicle pursuant to R.C. 4511.202. He was arraigned in Mentor Municipal Court and entered not guilty pleas to the charged offenses.

{¶16} Mr. Everett subsequently filed a motion to suppress evidence alleging an unlawful arrest and a violation of his *Miranda* rights. The trial court held an oral hearing on the motion, and Officer Jacob was the sole witness.

4

{¶17} The trial court denied Mr. Everett's motion to suppress, finding reasonable suspicion based on specific, articulable facts that Mr. Everett was violating a law, based on Mr. Everett's presence in the driver's seat of a vehicle that had crashed into the side of a building, and finding probable cause to arrest based on the signs of intoxication and the results of the field sobriety tests.

{¶18} Mr. Everett entered a no contest plea to the OVI offense, and the trial court imposed sentence, which was stayed pending appeal.

{¶19} Mr. Everett now appeals, raising the following two assignments of error:

{¶20} "[1.] The trial court erred in overruling appellant's motion to suppress evidence arising from appellant's unlawful arrest without probable cause.

{¶21} "[2.] The trial court erred in overruling appellant's motion to suppress evidence of statements made after appellant was placed in custody and not provided Miranda warnings."

**Standard of Review**

{¶22} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). The appellate court must then independently determine, without deference to the conclusions of the trial court,

5

whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

{¶23} In this case, Mr. Everett is not challenging the trial court's finding of facts, only its application of those facts to the law, so our review is de novo.

### Investigative Detention or De Facto Arrest

{¶24} In his first assignment of error, Mr. Everett asserts that the trial court erred in denying his motion to suppress evidence that he claims arose from an arrest without probable cause.

{¶25} Mr. Everett argues that he was arrested for purposes of the Fourth Amendment when he was handcuffed, searched, and held in the back of the police cruiser. The state argues that these activities were consistent with an investigative detention. According to the state, Mr. Everett was not arrested until after he failed the field sobriety tests and Office Jacob formally arrested him. Therefore, we must determine at what point Mr. Everett was arrested.

### *Constitutional Standards*

{¶26} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteen Amendment, guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The language of Article I, Section 14 of the Ohio Constitution is nearly identical, and it has been interpreted by the Supreme Court of Ohio as affording the same protection as the Fourth Amendment. *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, ¶11, citing *State v. Robinette*, 80 Ohio St.3d 234, 238-239

(1997).[1]  Courts must exclude evidence obtained by searches and seizures that violate the Fourth Amendment.  (Citations omitted.)  *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶181.

{¶27}  A police officer may stop and investigate unusual behavior without probable cause to arrest when the officer reasonably concludes that the individual is engaged in criminal activity.  *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991), citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  In assessing that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Terry* at 21.  The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.  *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus.  These circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.  *Andrews* at 87-88.

{¶28}  In addition, police officers may investigate vehicle accidents in which there is no claim of criminal liability and engage in "community caretaking functions" totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.  *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).  When approaching a vehicle for safety reasons, the police officer must be able to point to reasonable, articulable facts upon which to base his or her safety concerns*.  State v.*

---

1. In certain circumstances not present here, the Supreme Court of Ohio has construed Article I, Section 14 of the Ohio Constitution to provide greater protection than the Fourth Amendment.  *See State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶22 (regarding warrantless arrests for minor misdemeanors); *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶23 (regarding searches and seizures conducted by members of law enforcement who lack authority to make an arrest).

7

*Chrzanowski*, 180 Ohio App.3d 324, 2008-Ohio-6993, ¶24 (11th Dist.), quoting *State v. Norman*, 136 Ohio App.3d 46, 54 (3d Dist.1999).

{¶29} A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment. *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶66, citing *United States v. Watson*, 423 U.S. 411, 426-27 (1976). An arrest signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime. *State v. Darrah*, 64 Ohio St.2d 22, 26 (1980). An arrest occurs when the following four requisite elements are involved: (1) An intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Barker*, 53 Ohio St.2d 135 (1978), paragraph one of the syllabus.

{¶30} Probable cause is required when police restraint is so intrusive that, while not technically an "arrest," it may be "tantamount" to an arrest. *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir.1994), citing *Dunaway v. New York*, 442 U.S. 200, 212-16 (1979). Factors to be considered in distinguishing an investigative stop from a de facto arrest include the seriousness of the crime, the location of the encounter, the length of the detention, the reasonableness of the officer's display of force, and the conduct of the suspect as the encounter unfolds. *Columbus v. Galang*, 10th Dist. Franklin No. 02AP-1441, 2003-Ohio-4506, ¶16.

### *Initial Approach*

{¶31} Officer Jacob clearly had an objectively reasonable basis to approach Mr. Everett to make an initial inquiry. Whether or not Officer Jacob suspected criminal activity,

8

he was lawfully investigating a report from dispatch that a vehicle had crashed into a building on private property. *See State v. Tanner*, 160 Ohio Misc.2d 54, 2010-Ohio-5231, ¶2 (M.C.) (officer's initial contact with defendant after an accident was justified as a community caretaking function to check for injuries and secure the scene).

**{¶32}** Upon arrival, Officer Jacob encountered the rather unusual situation of a vehicle pinned between a building and a tree. Based on the tire tracks and damage to the landscaping, there was evidence indicating that the driver, Mr. Everett, had driven erratically for some unknown reason. Officer Jacob was therefore justified in approaching Mr. Everett to determine the cause. *See State v. Hilleary*, 2d Dist. Miami No. 88-CA-5, 1989 WL 55637, *3 (May 24, 1989) (erratic driving alone was a sufficient basis for an articulable and reasonable suspicion justifying an investigatory stop to determine the reason for the erratic driving).

**{¶33}** Since Officer Jacob's initial approach of Mr. Everett was legally justified, we next consider whether the officers' subsequent actions exceeded the permissible scope of a detention and rendered it a de facto arrest.

### *The Officers' Actions*

#### 1. Order to Exit Vehicle; Handcuffing; Placement in Police Cruiser

**{¶34}** The record indicates that Officer Jacob ordered Mr. Everett to exit the vehicle and handcuffed him, and another officer then placed Mr. Everett in the back of a police cruiser.

**{¶35}** When a police officer makes a stop supported by reasonable suspicion, he is authorized to take such steps as reasonably necessary to protect his personal safety

9

and to maintain the status quo during the course of the stop. *United States v. Hensley*, 469 U.S. 221, 235 (1985).

**{¶36}** Police may require a driver who commits a traffic violation to exit the vehicle even if they lack any particularized reason for believing the driver possesses a weapon. *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11 (1977); *State v. Evans*, 67 Ohio St.3d 405, 408 (1993) ("a *Mimms* order does not have to be justified by any constitutional quantum of suspicion"). Officers are also justified in ordering a driver to exit a vehicle to ascertain whether a medical or mechanical emergency exists. *State v. Blair*, 6th Dist. Wood No. WD-98-081, 1999 WL 606330, *3 (Aug. 13, 1999).

**{¶37}** While the use of handcuffs is a significant factor in determining whether an individual is subject to an investigative stop or de facto arrest, it is not automatically conclusive. *Columbus v. Beasley*, 10th Dist. Franklin No. 17AP-629, 2019-Ohio-719, ¶64. Police officers are entitled to ensure their own safety by handcuffing the detainee should the situation warrant it. *State v. Feliciano*, 11th Dist. Lake No. 2004-L-205, 2006-Ohio-1678, ¶27. Handcuffing and other means of detention may also be used to prevent flight. *State v. Pickett*, 8th Dist. Cuyahoga No. 76295, 2000 WL 1060653, *5 (Aug. 3, 2000).

**{¶38}** Similarly, a police order for a person to sit in a police car does not automatically transform an investigative detention into a formal arrest. *Id.* at *5. According to the Supreme Court of Ohio, "it is reasonable to place the driver in a patrol car *and* subject him or her to a pat-down search for weapons where placement of the driver in the patrol car is justified to protect the officer or the driver from a dangerous condition." (Emphasis sic.) *State v. Lozada*, 92 Ohio St.3d 74, 79 (2001). Placing a

subject in a police vehicle can also be justified in order to secure the scene. *United States v. Boyett*, 295 Fed.Appx. 781, 785 (6th Cir.2008).

**{¶39}** Whether handcuffing or other means of detention are reasonable depends on whether the restraint was temporary and lasted no longer than was necessary to effectuate the purpose of the stop, and whether the methods employed were the least intrusive means reasonably available to verify the officer's suspicions in a short period of time. *Pickett* at *5, citing *United States v. Glenna*, 878 F.2d 967, 972 (7th Cir.1989).

**{¶40}** In this case, Officer Jacob encountered a damaged vehicle and building that posed a potentially dangerous condition. Therefore, Officer Jacob was justified in ordering Mr. Everett to exit the vehicle to ensure his safety and to allow Officer Jacob to assess the situation.

**{¶41}** The officers' further actions of handcuffing Mr. Everett and briefly detaining him in a police cruiser were reasonable under the circumstances. Officer Jacob's reasonable, articulable suspicion that Mr. Everett had engaged in erratic driving supported securing Mr. Everett away from his vehicle while Officer Jacob addressed his immediate concerns regarding the vehicle and the building. *See Beasley* at ¶64 (handcuffing and placement in police cruiser reasonable as part of securing defendant away from his vehicle to permit further investigation); *See N. Olmsted v. Benning*, 8th Dist. Cuyahoga Nos. 79548 & 79561, 2002 WL 501693, *4 (Apr. 4, 2002) (placement in police cruiser reasonable while officer waited for further information from dispatch to permit investigation).

**{¶42}** In addition, based on Mr. Everett's revving of his vehicle's engine, Officer Jacob had a reasonable concern that Mr. Everett could attempt to flee. *See id.* at *5

11

(placement in police cruiser reasonable to prevent a suspected intoxicated person from driving away); *State v. Hopper*, 8th Dist. Cuyahoga Nos. 91269 & 91327, 2009-Ohio-2711, ¶23 (placement in police cruiser reasonable to prevent fleeing).

{¶43} Mr. Everett's danger to officer safety was also an objectively reasonable concern. Mr. Everett had apparently driven erratically for unknown reasons and had somehow gotten his vehicle stuck in an unusual position on private property. During his initial encounter with Officer Jacob, Mr. Everett demonstrated unusual behavior, such as failing to comply with some of Officer Jacob's directives until they were repeated three times and exhibiting a "blank stare" and "confused look" on his face. *State v. Wilson*, 3d Dist. Hancock No. 5-07-47, 2008-Ohio-2742, ¶29 (handcuffing and placement in police cruiser reasonable based on defendant's unusual behavior).

{¶44} The record does not suggest the officers had an intent to arrest Mr. Everett by handcuffing him and detaining him in the police cruiser. Rather, once Officer Jacob finished addressing his immediate concerns regarding the vehicle and the building, he spoke with Mr. Everett to investigate the cause of the accident. *See Benning* at *4 (handcuffing and detention in police cruiser not arrest where officer intended to conduct field sobriety tests after receiving further information from dispatch); *Tanner* at ¶2 (detention in patrol car not an arrest where officer only intended to maintain the status quo until an investigating officer could arrive).

{¶45} Significantly, Officer Jacob testified that Mr. Everett was only detained in the police cruiser for approximately two minutes before he was able to approach Mr. Everett to investigate. Therefore, the evidence indicates that the detention lasted no longer than necessary to effectuate its purpose of allowing Officer Jacob to secure the

12

scene. *See Beasley* at ¶64 (handcuffing and placement in police cruiser reasonable where defendant was released from the cruiser once recording equipment for field sobriety testing arrived); *Tanner* at ¶2 (handcuffing and placement in police cruiser reasonable where officers acted as promptly as possible).

{¶46} Based on the totality of the circumstances, the officers' actions of ordering Mr. Everett to exit the vehicle, handcuffing him, and placing him in the police cruiser were reasonable.

### 2. Search of Person

{¶47} The record further indicates that the officers patted down Mr. Everett and searched his belt/waist area and front pockets.

{¶48} Since potentially dangerous conditions justified the placement of Mr. Everett in the police cruiser, a protective pat-down search of Mr. Everett for weapons was also justified. *See Lozada* at 79 ("it is reasonable to place the driver in a patrol car *and* subject him or her to a pat-down search for weapons where placement of the driver in the patrol car is justified to protect the officer or the driver from a dangerous condition"). (Emphasis sic.)

{¶49} Mr. Everett cites the First District's decision in *State v. Franklin*, 86 Ohio App.3d 101 (1st Dist.1993), for the broad proposition that "[s]imply asking a defendant to empty his pockets prior to a *Terry* frisk converts an investigatory detention into an unlawful arrest without probable cause." However, the circumstances presented in *Franklin* are clearly distinguishable from the present case.

**{¶50}** In that case, the officers received a radio report of "a group of people standing out by a green car shooting." *Id.* at 103. The officers arrived at the scene and directed all persons to "go to the police cruiser and empty their pockets." *Id.*

**{¶51}** The *Franklin* court held that the officer did not have a reasonable basis to conduct a *Terry* "pat down" of the defendant for weapons, since the officer testified that he "had known the defendant since high school" and "was not afraid of him." *Id.* at 105. Here, there is no indication that the officers knew Mr. Everett, and, as previously indicated, they had a reasonable basis to conduct a *Terry* "pat down" of Mr. Everett for weapons.

**{¶52}** The *Franklin* court also held that the officer's directive that the defendant empty his pockets exceeded the limited scope envisioned under *Terry*. *Id.* However, courts have recognized that a pat-down is not the only option available when an officer has reasonable suspicion that a suspect might be armed and dangerous. *See State v. Michael*, 10th Dist. Franklin No. 12AP-508, 2013-Ohio-3889, ¶23. While a pat-down is generally the least intrusive and therefore preferred option, because of the myriad of encounters that may occur between officers and the public, courts must allow for the possibility that, in some circumstances, a pat-down may not be the least intrusive, most effective or safest option for an officer to verify or dispel suspicions that the person is armed. *Id.*

**{¶53}** In *Franklin*, the officers were investigating a reported shooting. *Id.* at 103. Therefore, the directive for everyone to empty his pockets resembled a general exploratory search for evidence of the shooting rather than a search for weapons to ensure officer safety. Here, Officer Jacob was investigating a reported vehicle crash, where he encountered a potentially dangerous situation and an individual responding

14

unusually. The officers' search of Mr. Everett appears to have been a component of securing him away from the vehicle and the building. Plus, the scope of the officers' search appears to have been limited to the areas where weapons are commonly hidden, i.e., the belt/waist area and front pockets. *See Michael* at ¶25 (search of waistband was reasonable as a *Terry* search for weapons); *State v. McGlown*, 3 Ohio App.3d 344, 347 (6th Dist.1982) (search of pocket was reasonable as a *Terry* search for weapons).

{¶54} Further, the officers did not seize any physical evidence from Mr. Everett. Unlike in *Franklin*, where the officers discovered a handgun and charged the defendant with carrying a concealed weapon, no evidence from Mr. Everett's person formed the basis for any charges against him, nor did it serve as justification for probable cause for his eventual arrest for OVI.

{¶55} Finally, when issues of officer safety arise and are supported by articulable facts, courts should not second guess an officer in a close case. *See State v. Shrewsbury*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶24.

{¶56} Based on the totality of the circumstances, we cannot say the officers' search of Mr. Everett's belt/waist area and front pockets was unreasonable.

### 3. *Cleveland v. Lopez*

{¶57} In his reply brief, Mr. Everett relies heavily on the Cleveland Municipal Court's decision in *Cleveland v. Lopez*, Cleveland M.C. Nos. 2018 TRC 22637 & 2018 CRB 12453, 2019 WL 1349667 (Feb. 22, 2019), which he misidentifies as a decision from the Eighth District Court of Appeals.

{¶58} In *Lopez*, a state trooper stopped the defendant for speeding. *Id.* at *1. During their conversation, the trooper smelled marijuana and heard slurred speech. *Id.*

15

The trooper proceeded to ask the defendant to exit the vehicle, handcuffed him, read him his *Miranda* warnings, pat him down, thoroughly searched his pockets and all items contained therein, placed him in a police cruiser, and thoroughly searched his car. *Id.* Finding nothing, the trooper removed the defendant from the cruiser, uncuffed him, and had him perform field sobriety tests. *Id.* The trooper then placed the defendant under formal arrest for OVI. *Id.* During the ride to the patrol station, the defendant admitted he had marijuana in his crotch. *Id.*

{¶59} The defendant filed a motion to suppress, arguing he was under arrest after he was handcuffed, *Mirandized*, searched, and placed in the cruiser. *Id.* at *2. The city argued the defendant was not arrested until his formal arrest at the end of the encounter. *Id.* The court determined that a reasonable person would believe he had been arrested as he sat handcuffed in the cruiser. *Id.* at *4.

{¶60} *Lopez* is factually distinguishable from this case in several crucial respects. In *Lopez*, the trooper initiated a routine traffic stop which may not have warranted the officer's aggressive show of force. Here, Officer Jacob encountered an unusual accident that posed a potentially dangerous situation, requiring Officer Jacob to secure Mr. Everett and the scene. The defendant in *Lopez* also did not attempt to flee during the trooper's initial approach, nor did he exhibit unusual behavior.

{¶61} In *Lopez*, the trooper handcuffed and searched the defendant immediately after he exited the vehicle. *Id.* at *3. The officer went through every pocket of the defendant's pants, including the smallest, emptied the pockets, searched through the items found (a pack of cigarettes and paper money), and even pulled out the lining of the pockets. *Id.* at *1, 3. According to the court, the trooper was obviously searching for the

16

marijuana he smelled. *Id.* at *1. In this case, there is no indication the officers searched Mr. Everett in a similar manner or for a similar purpose.

**{¶62}** In *Lopez*, it appears the trooper detained the defendant in the police cruiser for the purpose of searching the front and back seats and trunk of the defendant's car for marijuana. The record in this case indicates that the officers detained Mr. Everett in the police cruiser while Officer Jacob addressed immediate safety concerns regarding the vehicle and the building. Officer Jacob had not even had a conversation with Mr. Everett at this point.

**{¶63}** Finally, in *Lopez*, the detention was not limited in duration. In this case, Mr. Everett was only detained for approximately two minutes before Officer Jacob could speak with him.

**{¶64}** Under the totality of the circumstances, we conclude the officers' actions in this case did not exceed the bounds of a lawful investigative detention. The officers acted promptly and reasonably for the purposes of securing Mr. Everett and the scene and ensuring their safety until Officer Jacob could investigate the cause of Mr. Everett's erratic driving.

**{¶65}** Since the investigative detention did not ripen into a de facto arrest, we do not need to determine whether the officers had probable cause to arrest Mr. Everett for OVI when he was handcuffed and detained in the police cruiser.

**{¶66}** Mr. Everett's first assignment of error is without merit.

**_Miranda_ Warnings**

{¶67} In his second assignment of error, Mr. Everett claims the trial court erred in denying his motion to suppress the evidence obtained following his placement in custody without _Miranda_ warnings.

{¶68} The Fifth Amendment to the United States Constitution provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself[.]" The warnings given pursuant to the U.S. Supreme Court's decision in _Miranda v. Arizona_, 384 U.S. 436 (1966) are designed to protect against violations of the Fifth Amendment's self-incrimination clause. _State v. Rupp_, 11th Dist. Portage No. 2007-P-0095, 2008-Ohio-4052, ¶39.

{¶69} The duty to advise a suspect of _Miranda_ rights does not attach until questioning rises to the level of a "custodial interrogation." _State v. Roe_, 41 Ohio St.3d 18, 22 (1989). In determining whether an individual has been placed into custody, the test is whether, under the totality of the circumstances, a "reasonable person would have believed that he was not free to leave." _State v. Gumm_, 73 Ohio St.3d 413, 429 (1995).

{¶70} Applying the standard to the present case, Mr. Everett was not subject to custodial interrogation when Officer Jacob questioned him or administered field sobriety tests.

{¶71} The U.S. Supreme Court has held that the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" for the purposes of _Miranda_ warnings. _Berkemer v. McCarty_, 468 U.S. 420, 421 (1984). This court and others have applied the _Berkemer_ rule in cases involving accident investigations. _See State v. Chudzik_, 11th Dist. Ashtabula No. 2003-A-0002,

18

2004-Ohio-2791, ¶17 (applying *Berkemer* to admissions the police obtained during a crash investigation); *State v. Warrell*, 41 Ohio App.3d 286, 287 (9th Dist.1987) ("Simply requiring [the] defendant to sit in a police car for a short period of time to answer a few questions did not elevate the situation beyond the realm of the ordinary traffic stop approved in *Berkemer*"); *State v. Stafford*, 158 Ohio App.3d 509, 2004-Ohio-3893, ¶48 (1st Dist.) ("That [the defendant] had been involved in an accident did not change the fact that the officers initially had the right to detain and question him about the accident before actually arresting him"). A motorist at an accident scene can reasonably expect that he will be requested to answer questions. *Warrell* at 286.

{¶72} Courts have also found that the administration of field sobriety tests does not constitute custodial interrogation for *Miranda* purposes. *See Fairview Park v. Pelsnik*, 8th Dist. Cuyahoga No. 54915, 1989 WL 4140, *2 (Jan. 19, 1989), citing *Berkemer* at 442.

{¶73} Even assuming, *arguendo*, that Officer Jacob subjected Mr. Everett to custodial interrogation, Mr. Everett has not identified any self-incriminating statements that the trial court should have suppressed. Officer Jacob asked him if he had been drinking or had taken drugs, and Mr. Everett responded in the negative. *See Rupp* at ¶44 (*Miranda* violation not found where defendant made no inculpatory statements prior to taking the field sobriety tests).

{¶74} In addition, the Supreme Court of Ohio has held that nonverbal results of field sobriety tests are not self-incriminating statements. *State v. Henderson*, 51 Ohio St.3d 54, 57-58 (1990). *See Pennsylvania v. Muniz*, 496 U.S. 582, 588-89 (1990), quoting *Schmerber v. California*, 384 U.S. 757, 764 (1966) ("the privilege [against self-

19

incrimination] does not protect a suspect from being compelled by the State to produce 'real or physical evidence'").

{¶75} In *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶49, the Supreme Court of Ohio held that under the Ohio Constitution, "evidence obtained as the *direct result* of statements made in custody without the benefit of a *Miranda* warning should be excluded." (Emphasis added.) However, there is no indication that Officer Jacob's decision to administer the field sobriety tests was based on anything Mr. Everett told him. *See Rupp* at ¶44 (physical evidence was not the result of unwanted statements where the officer's decision to administer field sobriety tests was not based on anything the defendant said). Instead, the decision appeared to be based on the strong odor of alcohol on Mr. Everett's breath and Mr. Everett's bloodshot, glassy eyes and slurred speech. *See id.*

{¶76} Accordingly, the trial court was not required to suppress Mr. Everett's statements to Officer Jacob or the results of his field sobriety tests based on the failure to provide *Miranda* warnings.

{¶77} Mr. Everett's second assignment of error is without merit.

{¶78} Based on the foregoing, the judgment of the Mentor Municipal Court is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

20